I. HAUSMAN & SONS, INCORPORATED, PLAINTIFF-APPEL-
LANT, v. CENTRAL HOME TRUST COMPANY, A CORPO-
RATION, DEFENDANT-RESPONDENT.

Submitted October 30, 1936—Decided April 12, 1937.

For the defendant-respondent, *Stein, Stein & Stein* and *Martin P. O'Connor.*

For the plaintiff-appellant, *David B. & Moe Silver* and *Harry Levin.*

The opinion of the court was delivered by

WOLFSKEIL, J.  This is an appeal from a judgment entered for the defendant on a directed verdict in the Supreme Court,

Essex Circuit. The action was for the recovery of rent, taxes and other items claimed to be due under a lease made between the plaintiff and W. A. G. Realty Company on November 22d, 1922, for a large building with numerous stores in the city of Elizabeth for a term of about nineteen years at a yearly rental of $15,000 ($1,250 per month) for part of the term, and $15,500 ($1,291.67 per month) for the remainder of the term, beginning May 1st, 1932.

The W. A. G. Realty Company assigned the lease to a third party and by the route of mesne assignments it came into the hands of the Inter City Holding Company, of which one Max Stitch was president. On April 3d, 1930, the Inter City Holding Company assigned the lease to the defendant for the specified purposes of collecting the rents from the under-tenants and after deducting from the monthly rental the sum of $1,500, which was to be forwarded to the W. A. G. Realty Company, and a further sum not exceeding $4,000 per annum for the purpose of paying taxes, and one per cent. for the services of the defendant, to apply the balance to all existing indebtedness due or to become due to the defendant from Max Stitch and Charlotte Stitch on their notes aggregating $22,500. The assignment expressly stipulated that it was made "subject, nevertheless, to the covenants, conditions and provisions therein contained."

Pursuant to the authority given to it under this assignment, the defendant collected the rents and paid the amount due to the W. A. G. Realty Company monthly until and including January, 1932, when the latter defaulted in its payment to the plaintiff on the basic lease. Thereupon the plaintiff caused notices to be served on the under-tenants to pay their rent directly to the plaintiff, as it had a right to do under section 22 of the Distress act. 2 *Comp. Stat., p.* 1945. In this way of course the defendant would lose whatever meager security and comfort it got out of the lease which had been assigned to it as collateral to the Stitch notes and it prevailed upon the plaintiff to withdraw the notices. The defendant then undertook to pay the plaintiff the rent reserved in its lease with the W. A. G. Realty Company in these words

contained in a letter from the vice-president of the bank to David B. Silver, attorney for the plaintiff, under date of January 29th, 1932: "You are also advised that we will continue to pay the rent to I. Hausman & Sons, Inc., as long as a default exists on their [I. Hausman & Sons, Inc.] lease with the W. A. G. Realty Co." This letter was accompanied by a check for $1,250 in payment of the rent for the month of January, 1932.

Now prior to all this and when the notices were served on the under-tenants the president of the defendant bank wrote to Messrs. Silver, attorneys for the plaintiff, saying that the bank would not pay W. A. G. Realty Company any rent until the matter between them and the plaintiff was settled. A copy of a letter which had been mailed to W. A. G. Realty Company on January 22d, 1932, was enclosed. This letter read: "I. Hausman & Sons, Inc., of Newark, New Jersey, has served us with a notice to the effect that you are indebted to them for rent in the sum of $1,250. We will be unable, therefore, to pay you on February 15, 1932, the rent due you unless the claim of I. Hausman & Sons, Inc., is settled before that date." It is worthy of note that the bank directs attention to itself in this letter as the agent for Max Stitch.

The next day the Silvers', as attorneys for the plaintiff, replied saying: "If you will write us a letter stating that you will pay us the money due the W. A. G. Realty Co. we will refrain from giving notice to the tenants direct." Apparently all they seemed to expect when that letter was written was that the defendant would promise to pay the rent due the W. A. G. Realty Company. There is nothing in the letter which would indicate that the plaintiff expected a guaranty or an assumption of tenancy from the defendant. In a preceding paragraph of the letter they say: "We could notify the tenants to pay their rent direct to us but for your sake we would not like to disturb the lease." In answer to that letter the bank president said: "We are forwarding your letter of January 27, in the above matter to our attorney whom we have asked to advise us what proceedings we must institute to work a forfeiture of the W. A. G. Realty Co. so

that we may be in a position to deal direct with you." While this was fool-hardy language for the reason that a forfeiture of the W. A. G. Realty Company lease would automatically forfeit whatever rights the defendant bank had under the Stitch assignment, yet there does not seem to be anything in it that contemplates putting the bank into the position of a lessee or guarantor. Then came the letter of January 29th, 1932, to which reference has already been made and upon which great reliance is placed by the appellant as establishing liability on the part of the defendant.

Now the plaintiff and its attorneys knew that the defendant held the lease by assignment merely as security for the Stitch indebtedness and with that in mind the language in the letter of January 29th, 1932—"You are also advised that we will continue to pay the rent to I. Hausman & Sons, Inc., as long as default exists on their [I. Hausman & Sons, Inc.] lease with the W. A. G. Realty Co.," cannot legitimately be considered as obligating the defendant as a guarantor. Into the sentence just quoted must also be read the obvious intention of the defendant that it would continue to pay the rent to Hausman instead of to W. A. G. Realty Company as long as the latter was in default to Hausman. That is the logical construction that must be put upon that letter. It also couples up completely with the letter sent by the bank to W. A. G. Realty Company in which it was stated that no rent would be paid to it as long as default with Hausman existed. The plaintiff knew or was chargeable with knowledge of this correspondence because a copy of the letter to W. A. G. Realty Company was in the hands of its attorneys. Again, all that the plaintiff wanted was the money which W. A. G. Realty Company was entitled to receive which, of course, means the money collected by the defendant. To give to the correspondence relied upon the meaning for which the appellant contends would be a strain upon one's credulity and thereby put upon the bank a burden which it did not assume and had no reason for assuming.

It is also argued that the assignment of the lease to the defendant is general and absolute on its face and therefore

that the defendant is liable to the landlord, the plaintiff, as assignee directly or as pledgee of the lease, having taken possession and receiving the rents therefrom. We think, however, that the language "subject, nevertheless, to the covenants, conditions and provisions contained therein," and then a recital of the purposes for which it was made, is a limitation of the assignment. Then, too, a letter from the president of the bank to the attorneys for the plaintiff, under date of May 27th, 1932, clearly indicates the concept which the defendant had as to its position in the matter. It says: "As you know, we hold these leases to secure a debt and if we must pay more rent we must consider the advisability of retaining the lease since there is hardly sufficient net to meet the reasons for holding the lease." In answer to this letter the Silvers' said that their clients will not make any reduction in the rent as they also are tenants in the premises and their rent has not been reduced. They then say: "We made arrangements with your bank wherein you were to guaranty the payment of the rental called for in the within lease and our clients look forward to your living up to the terms and conditions therein." There was no foundation for this statement in the testimony or the exhibits and the president of the defendant bank immediately took exception to it on the next day when he wrote in reply: "No agreement exists between this bank and your clients wherein we guaranty the payment of the rental. As you know, the only reason we are paying this rent is because we hold the lease as security for a loan to Mr. Stitch and payments are being made by us to protect our interest in the lease."

Considerable parol testimony was introduced on behalf of both parties but no disputed question of fact appears to have been raised thereby. It follows that if there is any meritorious question involved it must be gathered from the correspondence and particularly from the letter of January 29th, 1932. That letter, however, does nothing more than to indicate that the defendant bank was to continue to pay the rent to the plaintiff as long as the default existed with the W. A. G. Realty Company. It does not impose any liability on the defendant either by guaranty or assumption of the lease.

The rule of law is firmly settled in this court by a long line of cases that the construction and effect of written instruments is a matter of law to be determined by the court and not by the jury, unless construction depends upon extrinsic facts which are in dispute. *Grueber Engineering Co.* v. *Waldron,* 71 *N. J. L.* 597; *Sommer Faucet Co.* v. *Commercial Casualty Insurance Co.,* 89 *Id.* 693; *Downs* v. *New Jersey Fidelity and Plate Glass Insurance Co.,* 91 *Id.* 523; *McLaren* v. *Marmon-Oldsmobile Co.,* 95 *Id.* 520, 524; *John S. Geiger Sons, Inc.,* v. *Waldron,* 100 *Id.* 93. Tested by that rule the court was justified in controlling the jury by a binding instruction directing a verdict in favor of the defendant. *Coyle* v. *Griffing Iron Co.,* 63 *N. J. L.* 609; *Vandergrift Construction Co.* v. *Camden, &c., Railway Co.,* 74 *Id.* 669; *Cleary* v. *Meyer Bros.,* 114 *Id.* 120. We are of the opinion that the proofs would not have supported any other verdict.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, HETFIELD, DEAR, WELLS, WOLFSKEIL, COLE, JJ. 8.

*For reversal*—TRENCHARD, PARKER, CASE, BODINE, HEHER, PERSKIE, RAFFERTY, JJ. 7.