AMCO TRUST, INCORPORATED V. P. C. NAYLOR.

No. A-6824. Decided October 29, 1958.
(317 S.W. 2d Series 47)

*Matthews, Nowlin, MacFarlane & Barrett* and *Lewis T. Tarver, Jr.,* all of San Antonio, for petitioner, Amco Trust, Inc.

The Court of Civil Appeals erred in holding that petitioner was liable for unpaid rent due under the lease and for damages

to the leased premises because as a matter of law petitioner was not a party to the lease and was not an assignee of the lease or in privity of estate or contract with respondent by election or otherwise. Davis v. Vidal, 105 Texas 444, 151 S.W. 290; Dunlap v. Bullard, 131 Mass. 163; Reagan v. Aiken, 138 U.S. 109, 34 L. Ed. 892, 11 Sup. Ct. 283.

*James C. Brady*, of San Antonio, for respondent.

In rebuttal cited Cockrell v. Houston Packing Company, 105 Texas 283, 147 S.W. 1145; Keton v. Silbert, 250 S.W. 316, no writ history; New Casino, Inc. v. City of Fort Worth, 198 S.W. 2d 602, refused n.r.e.

MR. JUSTICE WALKER delivered the opinion of the Court.

■ On the principal question in this case, we hold that the owner of a security interest in a leasehold estate who takes possession of the leased premises does not thereby become an assignee and liable as such to the lessor for the payment of rent under the terms of the lease.

P. C. Naylor, respondent, leased a one story building in San Antonio to South Texas Kitchens, Inc., hereinafter referred to as Kitchens, and its president, C. P. Ernster, for a term of five years, beginning December 15, 1953, at a rental of $225.00 per month. Kitchens went into possession of the property and there engaged in the business of selling and installing kitchen cabinets on a contract basis. During the ensuing two years, Amco Trust, Inc., petitioner, made sundry loans to Kitchens, secured by pledges of the latter's kitchen installation contracts.

Early in 1956 the aggregate balance unpaid on such loans exceeded $37,000.00, and Kitchens was unable to meet these or its other obligations Kitchens and its stockholders thereupon entered into a contract with petitioner, effective as of March 1, 1956, under the terms of which all assets and stock of Kitchens were assigned to petitioner as additional security for its loans and petitioner was authorized to take over, manage and operate the business until its indebtedness was satisfied. Petitioner was given the right to complete existing contracts, negotiate new contracts, collect and disburse money, and use the proceeds of the business to discharge Kitchens' debts. The instrument further provided that petitioner did not assume any of such obligations, and that the agreement would terminate upon the final payment and discharge of Kitchens' indebtedness to petitioner.

Petitioner went into possession of the leased premises and there operated the business for a period of some six months, paying the rent regularly during most of that period. On September 6, 1956, it vacated the property and removed and sold the office furniture and equipment and display kitchen units which Kitchens had placed therein. The building has not been occupied, and no rent has been paid, by either the original lessees or petitioner since that date.

This suit was brought by respondent against Kitchens, Ernster, and petitioner to recover the rent payable under the terms of the lease. He also sued for damages alleged to have been done to the building, but that aspect of the case will be discussed later in this opinion. The case was tried to the court without a jury and judgment was entered in favor of respondent and against Kitchens, Ernster and petitioner, jointly and severally, for the rent due and to become due for the remainder of the lease term. From this judgment petitioner alone appealed. The Court of Civil Appeals concluded that petitioner is liable as an assignee for the rent throughout the term, but since the lease contains no acceleration clause, the judgment of the trial court was reformed so as to allow respondent to recover only the unpaid installments accrued up to the date of the trial. 311 S.W. 2d 257.

The Court of Civil Appeals reasoned that the contract between Kitchens and petitioner gave the latter a security interest in the leasehold estate, and with this conclusion we agree. Its holding that petitioner upon entering into possession became liable as an assignee is undoubtedly a correct application of the rule adopted in Cockrell v. Houston Packing Co., 105 Texas 283, 147 S.W. 1145, where it was said:

"The mortgagee of a lease, who takes possession of the leased premises, is in the attitude of an assignee of such lease, and is therefore liable to the landlord for the rent. It seems to be a well-settled rule, applicable to our law, that the mortgagee of a lease, not in possession of the leased property, cannot be considered as an assignee; but if he takes possession of the leased premises he becomes, in law, the assignee of the lease, and is liable for the rents to the landlord * * * *."

Our investigation discloses that this rule is neither as well settled nor as well grounded as might be supposed from reading the Cockrell case. Liability to the original lessor for the payment of rent or the performance of other lease covenants may arise

from either privity of contract or privity of estate. When the lessee voluntarily transfers part or all of his interest under the lease to another, the transaction is accordingly treated as either an assignment or a sublease for the purpose of determining the rights and liabilities of the parties. In order to constitute an assignment, the lessee must part with his entire interest in all or part of the demised premises without retaining any reversionary interest. One who thus acquires the entire leasehold estate becomes the tenant in place of the lessee and is in privity of estate with the lessor. An assignee is accordingly liable for the rent reserved in the lease and for the performance of covenants which run with the land. If, on the other hand, the lessee retains any reversionary interest, no matter how small it may be, his transferee is not in privity of estate with the lessor and is regarded as a sublessee. There is no privity of contract between the lessor and a sublessee, and the latter is not liable to the lessor on the covenants of the lease, unless he assumes or otherwise binds himself to perform the same. See Davis v. Vidal, 105 Texas 444, 151 S.W. 290; 51 C.J.S. Landlord and Tenant, 553 Sec. 37, 566 Sec. 44, 578 Sec. 48; 32 Am. Jur. Landlord and Tenant, 289 Sec. 313 et seq., 320 Sec. 374, 342 Sec. 423; Tiffany, Landlord and Tenant, Vol. I, p. 907 Sec. 151, p. 968 Sec. 158, p. 1000 Sec. 162; 27 Texas Jur. Landlord and Tenant, 359 Sec. 214, 378 Sec. 226 et seq.

■ The effect of a mortgage upon the title to the mortgaged property is thus an important consideration in determining the status of a mortgagee of the leasehold estate. England and other jurisdictions which adhere to the common law doctrine of mortgages hold that the mortgagee is an assignee and responsible as such for the payment of rent regardless of whether he takes possession of the property. Williams v. Bosanquet, 1 B. & B. 238, 5 ECL 72, 129 Reprint 714; Williams v. Safe Deposit & Trust Co., 167 Md. 499, 175 A. 331. In states where a mortage is regarded as merely creating a lien, however, the lienholder does not become liable as an assignee, at least until he goes into possession of the property. Lansdell v. Woods, 127 Ark. 466, 192 S.W. 715; Detroit Trust Co. v. Mortensen, 273 Mich. 407, 263 N.W. 409; McKee v. Angelrodt, 16 Mo. 283; State ex rel. Johnson v. Commercial State Bank, 142 Neb. 752, 7 N.W. 2d 654; I. Hausman & Sons v. Central Home Trust Co., 118 N.J. Law 104, 191 A. 301; Walton v. Cronly's Administrator, 14 Wend. (N.Y.) 63.

New York was apparently the first lien-theory state to consider the liability of a mortgagee of the leasehold in possession.

It was there recognized that the mortgagor is owner against all the world subject only to the lien of the mortgage, but the court reasoned that "when the mortgagee takes possession he then has all the right, title and interest of the mortgagor" and accordingly held that the mortgagee in possession is an assignee and responsible to the original lessor for the payment of rent. Astor v. Hoyt, 5 Wend. (N.Y.) 603. See also Century Holding Co. v. Ebling Brewing Co., 185 App. Div. 292, 173 N.Y.S. 49. Similar reasoning led to the same result in Olcese v. Val Blatz Brewing Co., 144 Ill. App. 597, but only a few jurisdictions have squarely adopted the New York rule.

There is, on the other hand, respectable authority for the proposition that the liability of the mortgagee cannot be made to turn upon whether or not he goes into possession of the property. Johnson v. Sherman, 15 Cal. 237, 76 Am. Dec. 481. See also Northwestern Mut. Life Ins. Co. v. Security Savings & Trust Co., 9th Cir., 261 F. 575; Cargill v. Thompson, 57 Minn. 534, 59 N.W. 638. After referring to the English and New York rules and pointing out that in the latter jurisdiction the mortgagee's possession in some way affects the mortgagor's title, the Supreme Court of California in Johnson v. Sherman, supra, said:

"* * * * In this State, he is not regarded as ever having the title of the mortgagor, until judicial foreclosure and sale. The title remains with the mortgagor whether possession be taken, or otherwise. We only proceed, therefore, one step beyond the New York cases—following the same course of reasoning— when we hold, as we do, that a mortgagee of a term in possession is not liable as assignee upon the covenants of a lease * * * *."

Under our law a mortgagee in possession of either real or personal property with the consent of the mortgagor undoubtedly has special rights in the property, but the mere transfer of possession does not vest all of the mortgagor's title and estate in the mortgagee. In this state as in California, therefore, the premise upon which the New York rule rests cannot be regarded as valid. The holding of the Cockrell case on this question has not previously been followed by any of our appellate courts and will not be followed now, because we believe the California decision is sound in principle and supported by the better reasoning.

◼ In the present case, the lease was assigned to petitioner solely as security, and there is nothing in the record to suggest that the lien was ever foreclosed or that petitioner acquired

Kitchens' entire interest in the leasehold estate in any other manner. Under the terms of the agreement. petitioner was entitled to possession of the premises but could not use the same for its own exclusive benefit. The property was to be used only as a place to operate the business for Kitchens, and petitioner was under a duty to apply any profits arising therefrom to the lessee's debts. It was expressly provided, moreover, that the contract would terminate upon payment of the amount owing to petitioner. When that occurred, all of petitioner's rights in the leasehold estate would revert to Kitchens.

The lessee thus retained a reversionary interest in the leased premises, which might come back to it upon the happening of a contingency, and the transaction clearly constitutes a subletting rather than an assignment. As stated in Davis v. Vidal, supra, "if by any limitation or condition in the conveyance the entire term, which embraces the estate conveyed in the contract of lease as well as the length of time for which the tenancy is created, may by construction be said not to have passed from the original tenant, but that a contingent reversionary estate is retained in the premises subject to the reversion, the instrument must be said to constitute a subletting and not an assignment." Since petitioner did not assume the obligations of the lease and is not chargeable as an assignee, it is not liable to respondent for rent accruing after it vacated the premises. We do not attempt to determine whether there is any other theory upon which it might be responsible for either the stipulated or a reasonable rental during the time it occupied the property, because that question is not briefed by the parties. This probably is due to the fact that respondent was paid the rent for most of that period.

■ Turning now to the action for damages, respondent alleged that petitioner had removed fixtures, alterations and improvements which were part of the building, damaged the water, sewer and gas pipes, and left a large number of holes, cracks and scars on the premises; that the property had been damaged thereby in the sum of $750.00; and that he had been required to expend $624.97 for repairs. He prayed for a recovery of $1,374.97 as damages and that amount was awarded to him by the trial court. The Court of Civil Appeals concluded that this afforded a double recovery and reformed the judgment so as to allow only $750.00 as damages.

At the time the lease was executed the parties contemplated that Kitchens would, and it did, install a number of kitchen

cabinets in the building for display purposes. When petitioner vacated the premises, it removed and sold the office furniture and equipment and cabinets which Kitchens had placed therein. A number of the cabinet units were not attached to the building, but several had been arranged to represent a "complete cabinet" with a sink, dishwasher and garbage disposal installed therein. The wall cabinets in this "kitchen" were hung from cleats attached to the wall with screws. The sink was connected to the plumbing but the dishwasher and garbage disposal unit were not.

Respondent evidently proceeded on the theory that the kitchen cabinets had become part of the realty and that their removal gave rise to a cause of action for damage to the building. By express exception in the lease, it was agreed that trade fixtures would not become part of the premises or the property of the lessor, and in our opinion the cabinet units comprising the "complete kitchen" constituted trade fixtures as a matter of law. See Eckstine v. Webb Walker Jewelry Co., Texas Civ. App., 178 S.W. 2d 532 (wr. ref. w.m.) ; Moskowitz v. Calloway, Texas Civ. App., 178 S.W. 2d 878 (wr. ref. w.m.) ; Granberry v. Texas Public Service Co., Texas Civ. App., 171 S.W. 2d 184 (no writ) ; Nine Hundred Main, Inc. v. City of Houston, Texas Civ. App., 150 S.W. 2d 468 (wr. dis. Judg. cor.). The mere removal of these fixtures as well as the unattached cabinets, office furniture and equipment does not render petitioner liable for damage to the building.

In support of his claim respondent introduced photographs of the interior of the premises taken shortly after petitioner vacated same. These pictures show a small section of wall with studs exposed, several pipes from which fixtures or other pipes had been disconnected, open electrical boxes with wire extending therefrom, and holes in the wall apparently caused by the screws used to affix the wooden cleats thereto. The pictures and other evidence fail to show, however, what was done by petitioner that might be regarded as damage to the building. The holes in the wall, for example, were drilled by Kitchens, and petitioner is not responsible therefor.

Respondent testified that the value of the building was $15,-000.00 immediately before and $13,500.00 immediately after petitioner vacated the premises. These figures reflect the diminution in value resulting from removal of the trade fixtures and do not provide a measure of petitioner's liability for damage to the building. The evidence also shows that respondent spent

154

$648.87 to repair and put the premises in condition to rent again. It appears, however, that at least part of this expense is attributable to ordinary wear and tear, to Kitchens' installation of the cabinets, and to alterations made by respondent in the building as originally constructed. Petitioner is not responsible for these costs, and the evidence does not disclose what portion, if any, of the $648.87 was expended to repair damage caused by petitioner.

The evidence must show the nature and extent of any damage which petitioner did to the building before respondent can recover therefor, and the judgment in his favor cannot be permitted to stand on the present record. The allegations and proof suggest that respondent may also have a cause of action against petitioner for conversion of property on which he had a lien to secure the payment of rent. Since petitioner was held personally liable for the rent, however, the trial court did not reach the question of respondent's right to recover on the conversion theory. The damages aspect of the case will accordingly be remanded for a new trial.

The judgments of the courts below are reversed, and it is ordered: (1) that respondent take nothing against petitioner by virtue of the suit for rent, and (2) that the cause, in so far as it relates to respondent's right to recover damages from petitioner, is remanded to the district court for a new trial.

Opinion delivered October 29, 1958.