**J. W. JONES and Wife, Dorothea Jones, Appellants,**

**v.**

**EL PASO NATURAL GAS PRODUCTS COM-PANY, a Corporation, and Shell Oil Company, a Corporation, Appellees.**

No. 11304.

Court of Civil Appeals of Texas.

Austin.

June 2, 1965.

Rehearing Denied June 23, 1965.

Scott, Hulse, Marshall & Feuille, Charles R. Jones, El Paso, for appellants.

Richard L. Hughston, James A. Lore, Dan H. Farr, Midland, John A. Woodward, Odessa, Hardeman, Smith & Foy, Joe H. Foy, San Angelo, for appellees.

PHILLIPS, Justice.

On August 12, 1958, J. W. Jones and wife, hereinafter called appellants, entered into a letter agreement with El Paso Natural Gas Company, which involved the sale of a wholesale and retail marketing business, including dealer contracts, intangible assets and good will which included a noncompetitive agreement on the part of appellants for a ten-year term. The sale included personal property, equipment and inventory at the bulk plant, warehouse and filling stations. The letter agreement also gave El Paso the right to lease seven filling stations owned by appellants and a bulk plant and warehouse. The lease included the subleasing of one filling station which appellants did not own. The lease was to be for a term of ten years at a monthly rental of $3,000.00.

In October of 1958 the appellants and El Paso executed the leases provided for in the above-mentioned letter of agreement, which leases expressly provided that El Paso had the authority to sublet the properties without any restriction whatever.

In 1964, El Paso decided to go out of the gasoline refining and marketing business and in March of 1964 it entered into a contract with Shell Oil Company under which Shell acquired its entire gasoline marketing operation in five States.

Shell now has possession of the above-mentioned filling stations that El Paso leased from appellants under a sublease from El Paso. This sublease from El Paso to Shell also includes the above-mentioned bulk plant and warehouse.

Shell is now selling its own gasoline under the El Paso brand at the subleased stations and intends to substitute its signs and pumps for those of El Paso as soon as the rights of the parties involved in this lawsuit have been determined.

Appellants attempted by their suit to prevent the operation of the leased filling stations as Shell stations. They sought a declaratory injunction seeking the court to declare that: (1) the transaction between El Paso and Shell was an assignment rather than a sublease; (2) that the letter agreement of August 12, 1958, and the reading, tenor and effect thereof, permit the use of the leased properties only for the sale, merchandising and advertising of "such products as are marketed and sold by El Paso Natural Gas Products Company;" (3) that appellants have a lien on El Paso's personal property on the leases and El Paso cannot sell or transfer such personal property without appellants' consent; that such lien has attached as a result of El Paso's failure to perform normal maintenance such as painting; (4) ancillary thereto appellant prays for an injunction which would prevent Shell from taking possession of the filling stations pursuant to its acquisition of El Paso's marketing operations; prevent any change of colors, decals, symbols or any other advertising paraphernalia from El Paso's products to Shell's products; prevent the sale of any products other than El Paso Brand products at these stations; prevent the sale or removal of equipment located on the leased premises; and prevent the substitution or change of equipment on the leased premises.

Numerous depositions were taken before trial and appellants submitted numerous interrogatories to Shell and El Paso which were fully answered. Certain affidavits of the interested parties were included in the various motions submitted. It is not necessary to further describe these depositions, requests for admissions or affidavits for the disposition of this case.

The trial court held that there were no material issues of fact to be determined and on proper motion granted summary judgment for the defendants El Paso and

Shell Oil Company on the questions of law involved.

We affirm the judgment of the trial court.

Appellant J. W. Jones has been in the gasoline marketing business since 1921. Originally an employee of major oil companies, he became an independent jobber, wholesaler and retailer. By 1958 he had built up a business of respectable proportions as an independent jobber, wholesaler and retailer in and around San Angelo, Texas.

In 1958, El Paso sought to purchase Jones' business as an outlet for their refinery products in San Angelo and negotiations took place between these parties over a period of several months. Several drafts of documents were prepared by attorneys for each side before a final draft was agreed upon in August. This draft was signed on August 12, 1958 and is the letter agreement of August 12, 1958 referred to above.

There is no need to quote this lengthy document verbatim. The terms thereof are clear.

The second and third paragraphs thereof cover the sale of equipment, tools, merchandise, supplies, products, good will and the consideration therefor is stated. This contract also contains appellants' agreement not to engage in the gasoline distribution or service station business without El Paso's written consent in Tom Green County, Texas for a period of ten years.

The fourth paragraph contained the agreement to lease the eight parcels of land described in contract Exhibit "C." The leases were to be "substantially in the form" of Exhibit "A," attached and made a part thereof. Possession was to be delivered free and clear of all leases, dealer agreements, and encumbrances, except:

(a) A real estate mortgage on property at 3300 North Chadbourne, which plaintiffs agreed to pay off according to its terms.

(b) An operating agreement with Howard Fox on El Paso's standard form covering the property at 1000 South Chadbourne Street, at a stipulated rental, from which the ten-day cancellation clause could be stricken.

(c) A sublease from El Paso to Howard P. Bunch covering a butane business on the property at 3602 South Chadbourne.

(d) An operating agreement with Howard P. Bunch on El Paso's standard form covering the property at 3602 South Chadbourne, at a stipulated rental, from which the ten-day cancellation clause could be stricken.

The fifth paragraph contained appellants' promise to assign to El Paso their leases on certain other filling station properties. Subparagraph d. under the fifth paragraph described a station in Sterling City, Texas; subparagraph e. provided a general commitment to assign the leases on any other stations held by appellants, if El Paso should request it. The paragraph immediately following is as follows:

"It is understood that there are persons conducting the gasoline service station business on the properties described in the two immediately preceding unlettered paragraphs but that Grantors shall terminate all contracts and agreements under which they are operating and shall deliver the properties to El Paso free of such contracts and agreements, except as is hereinabove provided. El Paso may negotiate with any of the present operators for them to operate the stations under El Paso's standard form Operating Agreement effective after the closing date provided for herein."

The remaining paragraphs dealt with the details of title assurance, closing, prorations and other adjective provisions.

Exhibit "A," attached to that contract, is the form of lease ultimately executed. It provided for a ten-year basic term, with one five-year option.

Paragraph 6 of the lease provided as follows:

"6. Lessee shall have the right, at its own expense, to erect and construct on the leased premises any driveways, posts, signs, billboards or equipment of any description whatsoever and/or alter, add to, reconstruct or paint any of the buildings or property of the Lessor and/or rearrange any of the driveways; which Lessee may deem necessary for use of the leased premises as a motor vehicle service station. Lessee shall not construct any buildings or do any major reconstruction without the express written consent of the Lessor first had and obtained."

Paragraph 7 of the lease provided as follows:

"7. The leased premises are to be used as a motor vehicle service station for the sale of petroleum products and other merchandise customarily handled by such service stations; and for the servicing of motor vehicles; and for the conduct of any other lawful business; and the Lessee is hereby given the right to sub-lease or underlet said premises."

Paragraph 16 of the lease provided:

"16. Lessee is hereby given the right to sub-lease or underlet the premises. This lease may be assigned by either party upon the written consent of the other party. This lease and any renewal or extension thereof shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, successors or assigns."

By the last sentence of paragraph 2, it was provided that Lessor should have a first and prior lien on all property of Lessee on the premises in the event of termination for nonpayment of rentals.

Paragraph 5 obligated Lessee to paint the structures and perform "normal maintenance" thereon.

Paragraph 9 made additional provisions for liens as follows:

"9. In the event of Lessee's default hereunder in addition to all statutory and common law liens, Lessor is hereby given a first and prior lien on all properties of Lessee located on the premises. If Lessee is not in default in any of its obligations hereunder, then it shall have the right, at any time during the continuance of this lease or within thirty (30) days after termination, or any renewal or extension, either to remove from or leave upon the leased premises all or any part or parts of Lessee's property thereon. However, in the case of removal, Lessee agrees reasonably to restore the premises to its original condition."

Appellant J. W. Jones admitted that no one orally promised him that El Paso would never sell its business to another oil company. He was told in the negotiations that El Paso intended to develop the business aggressively. The prospect of a sale to another company was not contemplated or mentioned in the negotiations, so far as he could remember.

Appellants do not contend that El Paso committed any fraud or made any false promise to them in the negotiations.

■ Appellants' points of error before this Court are essentially the same as those points set out above in their original pleadings. They contend that El Paso's lease to Shell was an assignment and not a sublease. In support of this argument, they point out that as a part of the thirty-seven million dollar sale through which El Paso sold its entire marketing and refining facilities to Shell that it sold, transferred and conveyed all of its "right, title and inter-

est in and to" the leases on appellants' property. That on the same day this contract of sale was entered into between El Paso and Shell, these parties entered into an agreement wherein El Paso assigned all leases that it had to Shell. That in spite of a subsequent instrument wherein El Paso subleased the appellants' specific properties to Shell, since there had been no recision of the above-mentioned assignment, El Paso had nothing to sublease and was bound by the above-mentioned assignment, which was invalid.

We overrule this contention.

In the instrument in which El Paso assigned its leases to Shell there was the following condition:

"With respect to each of the leases as to which El Paso does not have the unconditional right to assign the same, this assignment shall convey to Shell only El Paso's beneficial interest thereunder, but subject to El Paso's covenant to execute any further instruments, and to assist in procuring any consents or other instruments necessary to effect Shell's acquisition of such lease and/or to insure its possession and enjoyment of the leased premises."

This provision was obviously inserted in contemplation of certain leases that could not be assigned and provided that other means were to be used in order to grant Shell the occupancy and the use of the property covered thereby.

Thereafter, pursuant to the aforesaid obligation, El Paso executed a sublease of each of appellants' stations to Shell. Shell has executed and accepted each of the subleases and is holding thereunder. Each of the subleases provide that El Paso may terminate it on ten days' notice in the event that Shell fails to pay any rental when due. Each sublease further provides for liens on all equipment Shell may place on the premises. Shell is obligated to paint the improvements and perform normal maintenance. It is also provided that if Shell defaults in any of its covenants, El Paso may terminate the sublease on twenty-five days' written notice.

Appellants have made no effort to forfeit El Paso's leases as a result of the purported assignment. They have continued to collect the rent.

■ We hold that the provision of a right for El Paso to terminate the tenancy on any breach of covenant by Shell is sufficient to constitute the instruments under which Shell holds subleases and not assignments. Davis v. Vidal, 105 Tex. 444, 151 S.W. 290; Sinclair Refining Co. v. Womack, Tex.Civ.App., 66 S.W.2d 402.

Appellants have cited and rely on Marathon Oil Company v. Lambert, Tex.Civ. App., 103 S.W.2d 176, writ dismissed, for the proposition that El Paso has conveyed its "beneficial interest" to Shell under the proviso quoted above, consequently leaving it no estate in its lease to Shell. Marathon is not in point here as the court held that party (Cannon) who was alleged to have sublet the property in question had not retained a reversionary interest in the leased property and in fact had assigned the lease in question. These are not the facts here. El Paso under the rule stated in the Davis and Sinclair Refining cases, above, has retained a sufficient estate to constitute his contract with Shell a sublease and not an assignment.

Since El Paso had no right to assign the leases to Shell, the general assignment of leases between these parties in March 1964 could not have been effective as to the appellants' stations, without the consent of appellants having been obtained. That consent has not been granted. Upon determining that the leases could not be assigned, El Paso and Shell agreed to substitute subleases therefor which, under the contract between them, they undoubtedly had the right to do.

Appellants contend that their permission for El Paso to sublease the stations was

limited to the use of El Paso's Standard Form operating agreements by the specific terms of the August 12, 1958 letter agreement between appellants and El Paso. That in any event, the letter agreement of August 12, 1958 creates an ambiguity on this point thereby raising a fact issue to be determined.

The lease agreement between appellants and El Paso gives El Paso the unlimited right to sublet the properties and at no place therein does it limit El Paso to the use of El Paso's Standard Form operating agreement in the event of a sublease.

■ Plaintiff arrived at this construction by maintaining that the lease contract must be read in conjunction with the letter agreement of August 12. That the letter agreement requires that said Standard Form must be used. This argument must fail.

There is no ambiguity whatsoever in the individual leases in question. These leases were signed in September 1958 for the filling stations in question as agreed in the August 12, 1958 letter agreement. The habendum clause of each lease closes with the following sentence: "This lease is subject to the following terms and conditions which are this day mutually agreed to." Nor does any other language of the lease refer to, or by implication invite, any existing outside modifying agreement. Two paragraphs in the leases, 7 and 16, contain the following terms and conditions which were, on September 15, 1958, mutually agreed to:

"7. The leased premises are to be used as a motor vehicle service station for the sale of petroleum products and other merchandise customarily handled by such service stations; and for the servicing of motor vehicles; and for the conduct of any other lawful business; and the Lessee is hereby given the right to sub-lease or underlet said premises.

16. Lessee is hereby given the right to sublease or underlet the permises.

This lease may be assigned by either party upon the written consent of the other party. This lease and any renewal and extension thereof shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, successors or assigns."

In Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977, the Supreme Court stated the rule to be:

"If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. It follows that parol evidence is not admissible to render a contract ambiguous, which, on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217."

Also see Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154.

Appellants further contend that the trial court erred in granting a summary judgment herein as the evidence reveals that El Paso is in default in its obligation to paint and maintain the leased premises of appellants, consequently under paragraph 9 of the lease between the parties hereto, El Paso is prohibited from removing these properties from the premises; that appellants have a lien on these properties to secure the performance of this obligation; that the trial court erred in not granting the injunction prayed for.

We overrule these points.

■ As we stated above, the trial court reserved the right of the appellants to bring a suit for damages that might have been

incurred through El Paso's failure to paint the equipment in question. We hold that appellants' remedy at law is adequate to protect their right to any damages that they may have and that the trial court properly refused to enjoin the sale of El Paso's personal property.

We have no quarrel with appellants' contention to the effect that the court may enjoin the removal or mortgaged property. There is no justification for such a drastic remedy here. The solvency of both El Paso and Shell can be judicially noticed. Humble Oil and Refining Co. v. Luckel, Tex.Civ.App., 154 S.W.2d 155, writ ref., w. o. m.

█ █ With respect to appellants' argument that there is no privity of contract between them and Shell, we point out that in the contract between El Paso and Shell, under Article Three "Mode of Payment," Paragraph C, Shell assumed all of El Paso's obligations under the leases. A similar assumption is incorporated in the general assignment of leases, and specific provisions are incorporated in the subleases, tracking the maintenance and lien covenants of the original leases. These covenants raise an exception to the general rule that a sublessee is not liable to the lessor on the covenants contained in the original lease. "* * * where the sublessee has agreed with the lessee to assume the obligations of the parent lease, the lessor has a right of action as a 'creditor beneficiary' against the sublessee for a breach thereof even though he is not a party to the contract of assumption." 51 C.J.S. Landlord and Tenant § 48, p. 581.

Recognizing this principle, the Supreme Court stated in Amco Trust, Inc. v. Naylor, 159 Tex. 146, 317 S.W.2d 47, 50, 73 A.L.R.2d 1109 (1958) that, "There is no privity of contract between the lessor and a sublessee, and the latter is not liable to the lessor on the covenants of the lease, unless he assumes or otherwise binds himself to perform the same."

Appellants' ultimate remedy here is money damages or the recovery of a debt and the defendants are solvent. Consequently, an injunction with respect to disposal or use of the property will be denied. Their remedy at law is adequate. Lewis v. Clark, Tex.Civ.App., 129 S.W.2d 421, error dism. j. c.; Bagley v. Higginbotham, Tex. Civ.App., 353 S.W.2d 868, er. ref., n. r. e.; Humble v. Luckel, above.

█ Where a case can be decided upon the construction of an unambiguous written instrument, the construction of the instrument is a matter of law for the court, and a summary judgment is proper. Dickey v. Bird, Tex.Civ.App., 366 S.W.2d 859, er. ref., n. r. e.; Ross v. Burleson, Tex.Civ. App., 274 S.W.2d 105.

We affirm the judgment of the trial court.

Affirmed.