02-10-455-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00455-CV

 

 


 
 
 Royalco Oil & Gas Corporation
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Stockhome Trading Corporation
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 153rd
District Court OF Tarrant COUNTY

----------

OPINION

----------

Appellant
Royalco Oil & Gas Corporation appeals from the trial court’s summary
judgment in favor of Appellee Stockhome Trading Corporation.  In one issue,
Royalco argues that the trial court’s failure to apply Texas oil and gas law
resulted in an erroneous determination that a partial transfer of a lessee’s
interest in a disposal well lease agreement was a sublease.  Because we hold
that the trial court did not err by declining to apply Texas law relating to
mineral leases, we affirm.

Background

In
February 2008, Stockhome entered into a “Salt Water Disposal Lease Agreement” (the
Lease) with Triad Rovan Services, L.P. (a third party not involved in this
appeal).  The Lease states that it “shall in no way affect ownership of the
oil, gas[,] or minerals in, on[,] or under the [lease premises].  This Lease is
for the sole purpose of allowing [Triad] to conduct its Business Activities.” 
“Business Activities” as defined in the Lease includes activities relating to
the disposal and treatment of water produced from oil and gas wells.  The Lease
provides a term of ninety-nine years or until Triad discontinues its “Business
Activities.”  The Lease contains a provision that Triad “shall not have the
right to sell more than 50% to assign or sublet its interest in this Lease or
the Premises” without Stockhome’s written consent.

The Lease
calls for Triad to make monthly rental payments.  Failure to make rental
payments is an event of default if Triad does not make the payment within
fifteen days after receiving written notice of nonpayment.  In the event of
such default, Stockhome can terminate the Lease by sending Triad final written
notice of its default and Stockhome’s election to terminate.  Triad then has
ten days to cure.

On
April 18, 2008, Triad entered into a “Services Agreement” with Royalco.  In the
Services Agreement, Royalco agrees to provide services “as specified on Exhibit
A.”  Exhibit A states that Triad “has the right to manage a deep well” under
the Lease with Stockhome, that Triad will continue to manage the well and the
well site, and that Royalco will complete and operate the well, as well as
another saltwater disposal well in Weatherford.  The exhibit further states
that “[i]n connection with [Royalco] providing the [s]ervices hereunder,
[Triad] assigns to [Royalco] 50% of [Triad’s] interest” in the Lease.  After
executing the Services Agreement, Royalco hired contractors to dig the existing
well on the property another 800 feet.

Triad
did not make its April 2008 rent payment to Stockhome when its check was
returned for insufficient funds.  Royalco issued a check to Stockhome to cover
the April rent.

Triad
failed to pay its May 2008 rent, and on June 25, 2008, Stockhome gave Triad
written notice that it was terminating the Lease for nonpayment of the rent.  Stockhome
gave notice to Triad of its default but did not give notice to Royalco.  In
July 2008, Royalco offered to cure the default, but Stockhome declined to
accept the offer.

Stockhome
sued Triad based on the Lease agreement.  Stockhome also sued Royalco for a
declaratory judgment that, among other things, Royalco was a sublessee of Triad
and had no standing under the Lease; that Stockhome properly terminated the
Lease; and that Royalco’s sublease with Triad terminated immediately upon
Stockhome’s termination of the Lease.  Royalco filed counterclaims for breach
of contract, quantum meruit, promissory estoppel, declaratory relief, and
unjust enrichment.

The
trial court rendered a default judgment against Triad and subsequently granted
summary judgment for Stockhome on its declaratory judgment action, decreeing
that, among other things, the assignment from Triad to Royalco was a sublease
and that Stockhome had properly terminated the Lease with Triad, which
terminated Royalco’s sublease.  The trial court ordered that Royalco take
nothing on its claims.

Analysis

Royalco
brings one multi-part issue, which we construe as a Malooly issue,[1]
arguing that the trial court erred by granting summary judgment for Stockhome. 
Under this issue, Royalco makes two primary arguments: (1) Stockhome failed to
support its motion with relevant, controlling Texas authority “i.e.,
Texas’s well-developed oil and gas law” and (2) the trial court’s construction
of the assignment as a sublease is inconsistent with and contrary to Texas oil
and gas law.

Royalco’s
arguments on appeal primarily turn on whether the Services Agreement was an
assignment or a sublease.  That the Lease and the Services Agreement use the
terms “assign” and “assignment” is not controlling.  Parties not infrequently
use the term “assignment” for instruments that, under the law, are subleases.[2] 
We look to the substance of an instrument to determine its legal effect.[3]

Under
the law relating to leases generally, the lessee’s voluntary transfer of part
or all of its interest under the lease to another is treated as either an
assignment or a sublease, and the rights and liabilities of the parties depend
on the nature of the transfer.[4]  If the lessee transfers
his entire interest in part or all of the premises without retaining any
reversionary interest, the transfer is an assignment.[5] 
The assignee becomes the tenant in place of the original lessee and is in
privity of estate with the lessor.[6]  If the lessee retains
any reversionary interest, the transfer is a sublease, and the transferee is
not in privity of estate or privity of contract.[7]  Royalco acknowledges in
its brief that if the Services Agreement constitutes a sublease rather than an
assignment, no privity of contract or privity of estate exists between Royalco
and Stockhome and that in that scenario, Royalco would have no contractual right
to enforce the Lease against Stockhome.

Royalco
first argues that under Texas law, oil and gas leases are different than
ordinary leases and are subject to different rules and that as a matter of
established oil and gas law, and under the Lease’s express terms, Triad could
and did assign up to fifty percent of its leasehold interest to Royalco.  But
the Lease between Stockhome and Triad was not a mineral lease.  Nothing in the Lease,
and no evidence in the record that Royalco has directed us to look at, gives
any indication that the Lease was for the recovery of minerals from the
property.  The Lease by its plain terms was instead for the purpose of drilling
and operating a disposal well on the premises.

Royalco
points out that the Railroad Commission of Texas, which issues permits for oil
and gas wells, issued a permit for this well.  That a permit for the disposal well
was issued by the Railroad Commission does not make this Lease an oil and gas
lease.  Rather, the Railroad Commission’s issuance of a permit merely reflects the
legislature’s adoption of a state policy relating to the maintenance of the
quality of fresh water in the state and its delegation of responsibility for
oversight of injection wells to various state agencies.[8]
 A disposal well is an injection well used specifically for the injection of
industrial and municipal waste or oil and gas waste.[9]

The
Railroad Commission is responsible for the control and disposition of waste and
the prevention of pollution water resulting from activities associated with the
production of oil, gas, or geothermal resources, including activities
associated with the drilling of injection water source wells that penetrate the
base of useable quality water.[10]  Accordingly, the
drilling or operation of a disposal well requires a permit issued by the
Railroad Commission.[11]  Thus, that the Railroad
Commission issued a permit for the disposal well does not make the Lease a
mineral lease subject to oil and gas law.

The Lease
in this case was a salt water disposal agreement.  The Lease itself states that
it “shall in no way affect ownership of the oil, gas[,] or minerals in,
on[,] or under the [lease premises].[12]  This Lease is for the
sole purpose of allowing Lessee to conduct its Business Activities.”  [Emphasis
added.]  “Business Activities” as defined in the Lease includes activities
relating to the disposal and treatment of water produced from oil and gas
wells, but it does not include recovery of any minerals, or indeed the recovery
of any natural resource.[13]  Because this Lease was
not a lease for the production of minerals, the trial court correctly applied
the law relating to leases generally, not the law governing oil and gas leases.[14]

Royalco
next argues that Stockhome failed to prove as a matter of law that the
entire term of the leasehold interest was not assigned and that the assignment
did not convey all of the interest or estate conveyed in the Lease.  Royalco
contends that its agreement with Triad “contains no language that in any way
limits the assignment of Triad’s interest to Royalco for a period of time less
than the entire term of the Lease.”  But the Services Agreement between Royalco
and Triad included the following provision:

1.       Term

(a)     The
original term of this Agreement shall begin on the date hereof and shall expire
on the 20 (18) year anniversary of the date hereof, unless sooner terminated in
accordance with the terms of this Agreement.

The Services
Agreement then provides for automatic termination if Royalco restructures.  The
agreement is unclear whether it expires in twenty years, eighteen years, or in
the year 2018.  But although the Services Agreement arguably raises a question
of fact about the exact length of time that the parties intended the agreement
to operate, it clearly was not intended to continue in effect for the nearly
ninety-nine years remaining on the Lease.

And
of course, the word “term” as related to leases means more than just “time”; to
constitute an assignment, the transfer instrument “must convey both the entire
time for which the lease runs and the entire estate or interest conveyed
by the original lease.”[15]  If the transferring
party retains any reversionary interest in the transferred interest, the
instrument is a sublease.[16]  Under the terms of the Services
Agreement, Triad retained a fifty percent interest in the Lease, and it had the
right to terminate the Services Agreement upon Royalco’s default and failure to
cure.[17]  The Services Agreement did
not assign the entire leasehold term, and, consequently, the agreement was a
sublease.[18]

Royalco
next argues that the Services Agreement was a valid partial assignment.  Citing
cases such as Ridge Oil Co. v. Guinn Investments,[19]
Royalco asserts that Texas law unquestionably allows partial assignments “of
oil and gas leasehold estates like the one at issue in this case.”  As we have
stated, the Lease is not a mineral lease, and the case law cited by Royalco is
therefore inapplicable.

Royalco
then argues that Stockhome failed to conclusively establish that it properly
terminated Royalco’s interest in the Lease.  Royalco’s argument under this
section of its brief is based on its assertion that its agreement with Triad
was an assignment, not a sublease.  Accordingly, we overrule this portion of
Royalco’s argument.

Finally,
Royalco makes two arguments relating to affirmative defenses it raised in
response to Stockhome’s summary judgment motion.  Royalco first asserts that
the trial court erred by granting summary judgment because a fact issue exists on
the affirmative defense of estoppel by contract.  In the two sentences of this
part of its brief, Royalco argues that the Lease authorized Triad to partially
assign up to fifty percent of its interest under the Lease and that “Stockhome’s
agreement to such assignment, at a minimum, creates a material facts issue as
to whether [estoppel by contract] precludes Stockhome from denying Royalco’s
assigned interest.”

Estoppel
by contract is a doctrine “whereby a party is bound by the terms of his own
contract . . . until it is set aside by fraud, accident or
mistake.”[20]  But Royalco points to
no evidence that it raised in the trial court that Stockhome did not abide by
the terms of the Lease.  The Lease states that Triad does not have the right to
“sell more than 50% to assign or sublet [i]ts interest in this Lease or the Premises”
without Stockhome’s consent.  But this language does not convert the Services
Agreement into an assignment,[21] and unless Triad made a
valid assignment of its lease to Royalco, then Stockhome’s termination of the
Lease without notice to Royalco does not violate the terms of the Lease.  As
stated above, Stockhome and Royalco do not have privity of contract or of
estate.  Nothing in the record indicates that Stockhome was a party to a
contract with Royalco.  The doctrine of estoppel by contract therefore has no
application here.  We overrule Royalco’s argument.

Royalco’s
last argument is that the trial court erred by granting summary judgment
because equitable estoppel applies.  It argues that “after being told about the
Triad [a]ssignment, Stockhome accepted payments due under the Lease directly from
Royalco and knowingly allowed Royalco to make valuable improvements to the [p]roperty.”

Equitable
estoppel is a doctrine by which a party, because of its voluntary conduct, is
precluded from asserting rights it might otherwise have against another person
who has relied on the party’s conduct and “has been led thereby to change his
position for the worse.”[22]  To establish equitable
estoppel, a party must show (1) a false representation or concealment of
material facts, (2) made with knowledge, actual or constructive, of those
facts, (3) with the intention that it should be acted on, (4) to a party
without knowledge, or the means of knowledge of those facts, (5) who
detrimentally relied upon the misrepresentation.[23]

In
its brief, Royalco fails to point out any false representation or concealment
of material facts by Stockhome on which Royalco relied to its detriment.  The Lease
gave Triad the right to sell fifty percent of its interest to another party.  In
accordance with that provision, Triad executed the Services Agreement with
Royalco.  Royalco then made rental payments to Stockhome and made improvements
on the property, and Stockhome did not stop it from doing so.  But none of
these asserted facts show a misrepresentation or concealment of facts, much
less any reliance by Royalco, and none of these facts show that Stockhome did
not abide by the Lease terms.

To
the extent that we can construe Royalco’s brief to argue that Stockhome represented
to Royalco that the provision in the Lease allowing for a fifty percent sale of
interest by assignment or sublease allowed for a true assignment (as that term
is used in landlord-tenant law) without Stockhome’s consent, and assuming that
this representation by Stockhome would support estoppel,[24]
Royalco points to no evidence that Stockhome did so.  Royalco points to no
evidence, for example, that Stockhome misrepresented to Royalco that the Services
Agreement agreement created privity of estate or contract between Royalco and
Stockhome or that the Services Agreement gave Royalco the same rights under the
Lease as Triad has, or even that Stockhome represented to Royalco that if Royalco
improved the property, it would treat Royalco as a true assignee of the Lease
rather than as a sublessee.  Accordingly, we overrule this part of Royalco’s
argument, and, having overruled all of Royalco’s arguments, we overrule its
sole issue.

Conclusion

Having
overruled Royalco’s sole issue, we affirm the trial court’s judgment.[25]

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and MCCOY, JJ.

 

DELIVERED:  January 26, 2012









[1]See Malooly Bros., Inc.
v. Napier, 461 S.W.2d 119, 121 (Tex. 1970) (allowing an appellant in an
appeal from the grant of summary judgment to bring one issue under which the
appellant may brief all possible grounds upon which summary judgment should
have been denied).





[2]See, e.g.,
Dameron Oil Co., Inc. v. Majeed, No. 10-01-00401-CV, 2004 WL 1211620, at *2–3
(Tex. App.—Waco June 2, 2004, pet. denied) (mem. op.) (construing an instrument
labeled as an “Assignment of Lease” as a sublease and noting that “[t]o decide
whether there is an assignment or a sublease, the form of the instrument is not
controlling”); Parr v. Farmers State Bank of Orange Grove, 659 S.W.2d
883, 884 (Tex. App.—San Antonio 1983, no writ) (holding that the instrument in
the case, though called an “assignment,” was in reality a sublease).





[3]See Parr, 659
S.W.2d at 884.





[4]Amco Trust, Inc. v.
Naylor, 159 Tex. 146, 150, 317 S.W.2d 47, 50 (1958).





[5]Id.





[6]Id.





[7]Id.





[8]See Tex. Water Code
Ann. §§ 27.003, 27.011 (West 2008).  The Texas Water Code defines an injection
well as “an artificial excavation or opening in the ground . . .
used to inject, transmit, or dispose of industrial and municipal waste or oil
and gas waste into a subsurface stratum” or a well that had originally been
drilled to produce oil and gas but now “is used to transmit, inject, or dispose
of industrial and municipal waste or oil and gas waste into a subsurface
stratum,” or “a well used for the injection of any other fluid.”  Id. §
27.002(11) (West Supp. 2011).





[9]Id. § 27.002(10).





[10]Id. § 26.131 (West
2008).





[11]Id. § 27.031 (West
2008).





[12]Cf. Irons v. Fort
Worth Sand & Gravel Co., 260 S.W.2d 629, 630 (Tex. Civ. App.—Fort Worth
1953, writ ref’d n.r.e.) (“A mineral lease is a sale of an interest in
realty.”).





[13]See Killam Oil Co. v.
Bruni, 806 S.W.2d 264, 267 (Tex. App.—San Antonio 1991, writ denied)
(stating that “under Texas law . . . the term ‘production’
as used in oil and gas leases means the actual physical extraction of the
mineral from the soil”); Parker v. Standard Oil Co. of Kan., 250 S.W.2d
671, 680 (Tex. Civ. App.—Galveston 1952, writ ref’d n.r.e.) (“The intention of
the parties to a mineral lease is that minerals shall be produced from the land
lease.”); see also Minchen v. Fields, 162 Tex. 73, 79, 345 S.W.2d 282,
287 (1961) (noting that “[t]he sole purpose of a mineral lease is to develop
the property in order to produce the minerals”) (quoting Sheppard v.
Stanolind Oil & Gas Co., 125 S.W.2d 643, 647 (Tex. Civ. App.—Austin
1939, writ ref’d)).





[14]See Dick Props., LLC
v. Paul H. Bowman Trust, 221 P.3d 618, 621 (Kan. Ct. App. 2010)
(acknowledging a difference between an oil and gas lease and a saltwater
disposal agreement).





[15]718 Assocs., Ltd. v.
Sunwest N.O.P., Inc., 1 S.W.3d 355, 360 (Tex. App.—Waco 1999, pet. denied) (emphasis
added) (citing Davis v. Vidal, 105 Tex. 444, 447, 151 S.W. 290, 292
(1912)).





[16]Id.; see also
Tawes v. Barnes, 340 S.W.3d 419, 429 (Tex. 2011) (noting that in an
assignment, “the original lessee retains no reversionary interest in the lease
whatsoever”); Amco Trust, 317 S.W.2d at 50 (“In order to constitute an
assignment, the lessee must part with his entire interest in all or part
of the demised premises without retaining any reversionary interest”)
(emphasis added).





[17]See Jones v. El Paso
Natural Gas Prods. Co., 391 S.W.2d 748, 752 (Tex. Civ. App.—Austin 1965,
writ ref’d n.r.e.) (holding that inclusion in instruments of the right to
terminate the tenancy on the breach of a covenant by the transferee made the
instruments subleases and not assignments).





[18]See Amco Trust,
317 S.W.2d at 50.





[19]148 S.W.3d 143, 147 (Tex.
2004).





[20]Mathews v. Sun Oil Co.,
411 S.W.2d 561, 564 (Tex. Civ. App.—Amarillo 1966), aff’d, 425 S.W.2d
330 (Tex. 1968).





[21]See Parr, 659
S.W.2d at 884.





[22]Farmer v. Thompson,
289 S.W.2d 351, 356 (Tex. Civ. App.—Fort Worth 1956, writ ref’d n.r.e.).





[23]Argyle Indep. Sch.
Dist. ex rel. Bd. of Trs. v. Wolf, 234 S.W.3d 229, 241 (Tex. App.—Fort
Worth 2007, no pet.).





[24]See Fina Supply, Inc.
v. Abilene Nat’l Bank, 726 S.W.2d 537, 540 (Tex. 1987) (noting that
generally, “[a] representation as to the legal effect of a document is regarded
as a statement of opinion rather than of fact”).





[25]On January 23, 2012, this
court received Stockhome’s suggestion of bankruptcy and motion to reinstate.  In
that motion, Stockhome states that Royalco filed for bankruptcy on December 19,
2011, and that on January 19, 2012, the bankruptcy court granted Stockhome
relief from the automatic stay for purposes of this appeal.  See 11
U.S.C. § 362(a) (2004 & Supp. 2011) (providing that when a defendant
files for bankruptcy, all judicial proceedings against the defendant are automatically
stayed).  Stockhome asks this court to reinstate this appeal.  Because this
court never previously received notice of Royalco’s bankruptcy filing, however,
this appeal was never abated in accordance with the automatic stay.  We
therefore dismiss this motion as moot.