**OTIS ELEVATOR COMPANY, Appellant,**

v.

**Lou Mae WOOD et vir, Appellees.**

**No. 4637.**

Court of Civil Appeals of Texas.

Waco.

Aug. 31, 1967.

Rehearing Denied Sept. 21, 1967.

Bailey, Williams, Weber & Allums, James A. Williams, Dallas, for appellant.

Dunnam, Dunnam & Dunnam, Richey, Sheehy, Teeling & Cureton, J. Robert Sheehy, Waco, for appellees.

## OPINION

WILSON, Justice.

Plaintiff was injured by an escalator in the department store of R. E. Cox Company. She sued Otis Elevator Company as designer and manufacturer of the escalator, R. E. Cox Company, and the contractor through which appellant installed the equipment. A covenant not to sue Cox and the contractor having been executed, plaintiff took a non-suit as to them. The cross-action of Otis against Cox and the contractor resulted in judgment for the latter defendants under the jury verdict by which they were absolved of liability, and Otis was

found responsible. Judgment for plaintiff was rendered against Otis on the verdict. We affirm.

Appellant assigns 50 points of error. The first group attacks the admission in evidence of hospital records under Art. 3737e, Vernon's Ann.Civ.Stats., the Texas Business Records Act.

Plaintiff pleaded that prior to the accident she was suffering from high blood pressure and diabetes which were controlled by medicine; that the emotional stress and trauma attending the accident aggravated these conditions "and the cutting off of oxygen to a part of her heart with a resulting dying of a part of her heart muscle."

The hospital record, exhibit 14, was objected to because it was not properly proved in accordance with statutory requirements, and no predicate had been laid; and because it contained medical opinions and evaluations "about which there could be disagreements among experts in the medical profession as to interpretation, diagnosis and evaluation." These objections were overruled.

The exhibit was a consultation report[1] in which Dr. Ross, the examining physician, stated he was not certain after examining x-rays and electrocardiograms whether marked myocardial damage found in plaintiff was old or recent, and the "age of this infarct is undetermined."

It is not necessary for us to pass on defendant's argument that this exhibit was inadmissible under the decision in Loper v. Andrews (Tex.Sup.1966), 404 S.W.2d 300, for, in our opinion, even if its admission was error, the error is harmless. The restricted effect of the doctor's opinion concerning the infarct was that maybe it was, and maybe it was not related to her present symptoms.

The significance of exhibit 14, however, is its relation to the next series of points, which complain of other medical evidence. Dr. Fadal, called as plaintiff's witness, had examined and treated her. She had given a history of high blood pressure and diabetes, which were controlled.

As a basis for a hypothetical question Dr. Fadal was asked to assume that the running

1. "Plaintiff's Exhibit No. 14
Hillcrest Memorial Hospital

CONSULTATION

"Name: Mrs. Waller Putman Wood (Ludie) Room No. 321A
Date    8/13/66; Hospital Number 281168
From    Doctor King to Doctor Ross;
Note    Findings and Recommended Treatment:

Following the surgery she seemed to be very weak and had a fairly marked tachycardia and because of this and because of the fact that on x-ray the heart showed slight enlargement, I ordered an electrocardiogram. To my considerble surprise it came back showing very definite marked myocardial damage compatible with residuals of an infarct. A repeat electrocardiogram a few days later was similar. Whether this is an old infarct with scarring and not related to her present symptoms or whether this actually represents a recent infarct of a silent type or relatively silent type with no pain and with no cardiac failure, but only some weakness is not yet certain. At any rate we may say the following things: She has done well from the standpoint of recovery from surgery. She is a mild diabetic well controlled. She has hypertensive heart disease with the hypertension well controlled at the present time. Finally, she has definite evidence of residuals of a myocardial infarct on the electrocardiogram, but the age of this infarct is undertermined. She will still be treated conservatively and another EKG will be taken.
                                        s/ P. H. Ross
                                        P. H. Ross, M.D."

rail of the escalator had pulled and jerked the 61-year-old plaintiff forward through "a hole" or open space adjacent to the rail when she attempted to rescue a child who was screaming on the escalator; that her body was left hanging toward a 30–40 foot drop; that her legs and knees were bruised; that she was pale, nauseated and nervous, and her skin "felt clammy"; and that she had chest pain. He was asked to further assume that "a year and nine months later the findings were found in the Hillcrest Hospital as set forth in exhibit 14," and to assume "as facts what is shown on the report of Hillcrest Hospital of the cardiogram."

The question was: "In your opinion could the experience of this 61-year old lady with diabetes and hypertension and the pain and bruising of her body and the exertion of running to that escalator at her age and her physical condition and being hurled through it in the manner I have described, in your opinion, could that have caused the scarring of her heart with the myocardial infarct, and at that time?"

Appellant objected that the opinion sought to be elicited was not based on reasonable medical probability. Appellee argued that "it's merely whether it could have" as to "whether something in the past caused this condition." The trial court ruled, in effect, that the question should be based "on reasonable probability", and overruled the objection. Then: "Q. In your opinion could that have caused the scarring of that lady's heart by a myocardial infarct at that time or shortly thereafter, as a result of it?" The witness replied that the electrocardiographic evidence had surprised Dr. Ross because it was incompatible with her lack of symptoms; that it was compatible "with the residuals of her *previous* myocardial infarction," which

meant, that the change in the electrocardiogram "must have occurred sometime *in the past*. They were *old changes*. They were *not acute or new changes*."

It is obvious that to this point the answer of the witness is favorable to defendant. The effect of the opinion the doctor has expressed is that the condition shown in the electrocardiogram does not demonstrate a causal relationship to the accident. It is clear and unequivocal. Dr. Fadal then added: "There are myocardial infarctions or heart attacks that are called 'silent' that are not as full blown as the classical type that people are used to seeing, and the situation you describe; certainly, it could have been a possible cause of that."

In reviewing the case under these facts we are not required to decide whether this evidence is characterized as not resting in reasonable probability, or whether it is inadmissible under rules announced by the decision in Insurance Company of North America v. Myers (Tex.Sup.1966), 411 S.W. 2d 710; or whether that case impliedly overruled prior intermediate court decisions which distinguished between medical opinions relating to conditions already in existence and future conditions.[2]

Dr. Fadal's testimony does not require the construction, as appellant insists, that in his opinion plaintiff's infarct could have resulted from the accident. We think his testimony is more logically interpreted to be, when considered as a whole, that the infarct shown on plaintiff's electrocardiogram "must have occurred some time in the past," and represented "old changes— not new changes." The question of whether his opinion as to causal relation between accident and infarct is based on reasonable medical probability is simply not in the case. If it is, then the testimony is innocuous under the opinion in Insurance Company of

2. E. g.: Midwestern Insurance Company v. Valentine, Tex.Civ.App., 381. S.W. 2d 957, 959, no writ; American General Insurance Company v. Florez, Tex.Civ. App., 327 S.W.2d 643; Atkinson v. United States Fidelity & Guaranty Co., Tex. Civ.App., 235 S.W.2d 509, 514, writ ref., n. r. e. See also American Surety Co. v. Semmons (Tex.Civ.App., 1967), 413 S.W. 2d 732, Syl. 4.

North America v. Myers (Tex.Sup.1966), 411 S.W.2d 710, 713:

"Reasonable probability, in turn, is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any particular term or phrase."

The admission of the testimony was not reversible error, in our opinion.

Other points have been fully considered and are overruled.

Affirmed.