Dennis H. LENGER, Appellant,

v.

PHYSICIAN'S GENERAL HOSPITAL INC., et al., Appellees.

No. 16992.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 21, 1969.

Rehearing Denied March 14, 1969.

Hooper, Steves & Kerry, and Sterling W. Steves, Fort Worth, for appellant.

Cantey, Hanger, Gooch, Cravens & Scarborough, and William B. David and Richard L. Griffith, Fort Worth, for appellee, Physician's General Hospital, Inc.

Crumley, Murphy & Shrull, and Franklin Moore, Fort Worth, for appellee, Pauline Jones.

## OPINION

MASSEY, Chief Justice.

The appeal is by plaintiff Dennis H. Lenger. Judgment was rendered pursuant to an instructed verdict in favor of defendants whom the plaintiff averred to be liable to him for damages flowing from negligent tort. They were Physician's General Hospital, Inc., a private corporation, which was alleged to be independently negligent and also vicariously under the doctrine of *respondeat superior* because of the negligence of Pauline Jones acting as and posing as a Licensed Vocational Nurse (though not so licensed), Pauline Jones, and Berdena Hightower, d/b/a Adamson Nurses Registry, who had sent Mrs. Jones to the Physician's General Hospital as a Licensed Vocational Nurse.

Instruction of the verdict in favor of the defendants was because of the trial court's holding that despite the existence of fact issues upon their negligence, there was a complete absence of probative evidence raising the issue of proximate cause of plaintiff's injuries. With such holding we are in accord.

Judgment affirmed.

In Hart v. Van Zandt, 399 S.W.2d 791, at page 797 (Tex.Sup., 1965), the Supreme Court reversed this court (our opinion at 383 S.W.2d 627), stating that "The Court is of the opinion that it would be unrealistic to hold that the above described testimony does not present a question of fact upon which reasonable minds could differ (concerning the existence of proof upon negligence amounting to proximate cause sufficient to entitle the plaintiff to go to the jury)." We have tested the evidence in the case before us in light of the statement quoted from the case cited to determine whether there would be any liberalization thereof which would entitle us to make such statement here. We have concluded that we are not so entitled.

The essential facts are as follows: (1) On August 10, 1965, a Dr. Rainone performed a colon resection to remove a cancerous growth located in the middle of the transverse section of the colon. (2) Upon being moved to his room following the operation plaintiff was in bed, under morphine sedation, being fed intravenously in the arm with a dextrose-lactate solution, and apparently at all times there was a Levin tube inserted through his nose going into his stomach, which was kept evacuated through such tube by a suction pump. (3) On August 11, 1965, such condition persisted. Dr. Rainone's explicit instructions to the hospital were that nothing whatever was to be fed plaintiff by mouth, of which instructions all personnel connected with plaintiff's case were aware, or in the exercise of ordinary care were chargeable with the duty of being aware. Pauline Jones was the nurse on duty with plaintiff, purportedly as a Licensed Vocational Nurse. (4) On August 12, 1965, Pauline Jones went on duty on plaintiff's case, in his room, at 7:00 o'clock A.M. At 7:45 o'clock A.M. a tray of food was brought to the room with a slip indicating that it was to be served plaintiff. Dr. Rainone's explicit instructions that plaintiff was not to be fed by mouth had never been changed. It was through negligent error on the part of an unidentified employee in the hospital's die-

tary department that the food had been prepared and sent to plaintiff's room. Indeed, on the day's diet sheet were prescribed three low residue meals for plaintiff. (5) When Pauline Jones prepared to feed plaintiff breakfast on August 12, 1965 he protested. Although still under morphine sedation he imparted to her his understanding that he was not supposed to eat anything. He asked her to call Dr. Rainone. Pauline Jones told him that he should eat the food; that if that were not so it would not have been sent to him. She refused to call the doctor. She fed him the breakfast, consisting of eggs, bacon, toast and coffee. (6) At noon on that day, August 12, 1965, the process was repeated, Pauline Jones feeding him again. The meal consisted of chicken and dressing. Afterward the Levin tube running into plaintiff's stomach became clogged with food. A nurse attempted to irrigate the tube because of the clogging. Plaintiff's afternoon was uncomfortable. He refused to eat the meal brought to him that evening. (7) On August 13, 1965, no attempt was made to feed the plaintiff any food by mouth. Apparently Dr. Rainone's instructions were strictly followed on and from that date. Beginning August 15th plaintiff was given Seven-Up and ice chips as the only items to be received by mouth. (8) On August 16, 1965 plaintiff first began to receive food by mouth pursuant to the orders of Dr. Rainone. On that date he was started on a liquid diet. This diet included jello, beef broth, the thicker soups with soft particles in them, milk, ice cream, certain cooked cereals, and soft drinks such as Seven-Up, Ginger Ale, etc. During this time plaintiff's intravenous feeding was continued.

On August 20, 1965 plaintiff was again operated on by Dr. Rainone. Pursuant to findings upon re-entry the doctor discovered at the site of the first operation that the two ends of the colon, where the colon resection was sutured together upon the occasion of the initial operation, had come completely apart. There was gas and fecal material free in the abdominal cavity. A portion of the small intestine had forced or inserted itself in or under the portion of the colon where the resection had been sutured but had pulled apart or been forced apart. One result of the movement of the small intestine, resulting in a mechanical obstruction of the small intestine, was that it filled with gas and fecal material and its own secretions. This created pressure underneath the colon, forcing the colon in two.

Dr. Rainone testified that the gas and fecal matter free in the peritoneal cavity had escaped from the colon (obviously from the break in the colon where it had formerly been sutured), and that its presence existed because of or through food received through the mouth at some time. At no point in his testimony did he ever give an opinion as to the time of such food ingestion. Neither did he ever express any opinion as to the particular type of food which formed the fecal matter, i. e., whether it was formed from and as the result of food ingested on August 12, 1965, or as the result of food ingested on August 16, 17, 18, or 19. Neither did the doctor express an opinion as to whether the operation performed on August 20, 1965 was made necessary either in whole or in part because of the presence of the gas and/or fecal matter found upon re-entry to be loose in the abdominal cavity. We can safely assume that such operation was made necessary because of the separation of the colon; but, without medical evidence, we cannot make the assumption that it was made necessary because of the presence of the fecal matter. Dr. Rainone did testify that because of the presence of the fecal matter found on August 20, 1965 the infection therefrom resulting made a procedure necessary which left affairs in such state that a future operation was required (performed a few weeks later), pursuant to which the remedial procedures made impossible on August 20th because of the condition of infection then obtaining could be successfully undertaken after the infection was controlled. Therefore there would be evidence that

presence of the fecal matter caused occasion for one operation as well as the disability incident to treatment preparatory thereto. The doctor testified that in the operation of August 20, 1965 the condition found to be existent in the small intestine was corrected.

At a critical point in the direct examination of Dr. Rainone by counsel for plaintiff the following occurred:

"Q. * * * Based upon your findings which you have just described a few minutes ago that you found a mechanical small bowel, an intestinal obstruction which involved almost entirely the small bowel, and which you said had herniated, or had a hole in it, in the colon and had twisted, and that the ends of the colon you had joined together, had sutured together before had come apart. That you had a leak at this place with both gas and fecal material free in the body cavity, and then you performed the operation that you performed, and described, to correct the situation, and my question to you was, what is your opinion as to what caused this?

" * * *

"A. Well, the entire—say, that this came about as a result of the fact that the mesocolon, or the tissue holding under the colon bringing its blood supply came apart. That's, this is the primary cause of this entire complication. Why did it come apart, that's—this might more properly be, that is if I understand, this might be what the question is: Why did it come apart?

"Q. Why did it come apart, that is what I am asking you.

" * * *

"A. What did cause it to come apart? —I don't know what caused it to come apart.

"Q. Well, what could have caused it to come apart?"

At this point, defendants' objection was interposed. The court recessed. The court ruled against the admissibility of any answer. The plaintiff introduced further evidence from Dr. Rainone for purposes of a Bill of Exceptions and also in tender of further evidence of Dr. Rainone he desired to introduce. Leave to introduce such was denied. Thereafter, plaintiff did not attempt to elicit further testimony from Dr. Rainone before the jury on the matter of causation. Plaintiff did not present any other expert witness upon such matter.

On plaintiff's Bill of Exceptions there was an attempt to develop Dr. Rainone's testimony upon causation. At no point did the doctor testify that—based upon reasonable medical probabilities—he had an opinion either that the separation of the colon at the point where it did separate after the initial operation, or the presence of the fecal matter in and about the area of the separation, resulted because of the plaintiff's ingestion of food on August 12. The doctor did positively state that at the point in the colon where the sutured portion thereof came apart or began to come apart, the small intestine had herniated into the opening of the colon with the result that the small intestine became more obstructed. The small intestine expanded with gas and fluid so that it actually mechanically forced the colon apart and pulled or pushed the colon in two.

On plaintiff's Bill of Exceptions, in answer to a question, "If this patient had not been fed food, would the small bowel have been obstructed such as it did here?" Dr. Rainone responded by saying that he did not know. In answer to the question, "Could you say with reasonable medical probability, would you have expected to find food, find gas and fecal material in the peritoneal cavity (if there had been no food fed to plaintiff)?" the doctor said he would not have so expected. On cross-examination the doctor testified that he did not know that any of the food fed to the plaintiff on August 12th ever reached the colon. In answer to the question, "We have a situation here that could have occurred from any one of a number of con-

ditions, you don't know which one, if any, it did occur from, and it is just as likely that it occurred from one as another, isn't that true?" the doctor testified that he so believed.

On the matter of "cause" of the condition in which plaintiff was found on the occasion of the second operation on August 20, 1965 (and in so treating such as the question we have liberalized the testimony) Dr. Rainone stated that as a cause thereof the August 12th feeding of the patient was a "distinct possibility" and a "real possibility".

Under our view of the record there was no probative evidence which tended to directly establish causation between the feeding of food to plaintiff on August 12, 1965 and the injuries to his person. If we are correct the judgment of the trial court is to be affirmed. The only theory upon which the trial judge is claimed to have been incorrect in its holding is that the medical testimony to the effect that such could have caused plaintiff's injuries, taken into consideration with other evidence admitted—and/or taken into consideration with admissible evidence tendered on plaintiff's Bill of Exceptions,—either did or would have presented evidence of probative force and effect sufficient to support a submission of the issue of proximate cause.

We are extremely fortunate to have four recent Supreme Court decisions which discuss applicable principles controlling disposition of the question. Since the later decisions discuss the former we will cite them inversely, with the last first and the first last. They are: Insurance Company of North America v. Kneten, 440 S.W.2d 52 (opinion of Court of Civ.App., 430 S.W. 2d 565); Parker v. Employers Mutual Liability Ins. Co. of Wisconsin, 440 S.W.2d 43 (opinion of Court of Civ.App., 418 S. W.2d 570); Otis Elevator Company v. Lou Mae Wood, 436 S.W.2d 324 (opinion of Court of Civ.App., 418 S.W.2d 532); Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.Sup., 1966).

In view of the rather exhaustive discussions in the cited cases, and of the conclusions upon the law therein arrived at, we are of the opinion that the evidence in the instant case failed to raise the issue of proximate cause. Furthermore, we would be of the same opinion if the trial court had admitted before the jury all the evidence presented in the plaintiff's Bill of Exceptions. This is a case where the causal connection between plaintiff's injuries and the occasion therefor must rest in reasonable probabilities, otherwise the inference that the injuries were proximately caused by the negligence of the defendants would be no more than speculation or conjecture. A distinction is to be made between a reasonable "medical probability" and a "medical possibility". From the "medically possible causes" of plaintiff's condition, concerning which there was testimony, the defendants' negligence cannot be said to have been established as any one of the "medically probable causes" because of the absence of other reasonable causal explanation. There was evidence showing existence of other reasonably possible causes of plaintiff's condition. (It was of these Dr. Rainone spoke when he testified in the aforementioned question and answer upon his cross-examination during the introduction of testimony for purposes of plaintiff's Bill of Exceptions.) A possible cause only becomes "probable" when in the absence of other reasonable causal explanation it becomes more likely than not that the injury was the result of its action. This is the outer limit of inference upon which a proximate cause issue can be submitted to a jury, and we have tested the evidence in an endeavor to see if the case might be considered as within such an outer limit of inference. See discussion in Alton A. Parker v. Employers Mutual Liability Co. of Wisconsin, supra.

Dr. Rainone's evidence relating to possibilities is not construable as having the meaning of "probabilities"; whether considered independently or considered as a part of the whole of the evidence in the case. Inclusive of, or aside from Dr.

Rainone's evidence, there is no sequence of events strong enough to establish a probable causal connection between defendants' negligence and plaintiff's injuries. We do not believe that it could be said that a layman could safely relate the negligence of the defendants on August 12, 1965 to the condition found on August 20, 1965. Proof of the nature of the improper attention given plaintiff on August 12th, even when considered as reasonably calculated to cause injury to him, would not present evidence of sufficient probative force to support an inference of fact that the improper treatment was a concurring, contributing, or producing cause of plaintiff's condition on the 20th, unless fortified by additional evidence to that effect. There is none to be found in the record.

Furthermore the evidence in the record from Dr. Rainone, plaintiff's medical witness, shows more than one equally probable cause, for one or more of which defendants would not be responsible. (For sake of this statement we magnify and treat the doctor's opinions upon "possible" causes as amounting to opinions upon "probable" causes.) In such a case nothing more may be considered to have been established than that the defendants' negligence was a "possible" cause of plaintiff's injury. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause and the jury can do no more than guess or speculate as to which was, in fact, the efficient cause, the submission of such choice to the jury is condemned. Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1 (1949).

As we view the case made by the pleadings the burden of proof incumbent upon the plaintiff required that he show either: (1) that the separation or opening in the colon which occurred subsequent to the initial operation on August 10, 1965 resulted from pressure or action of the adjacent bodily organs in and/or upon it (matter which was proved) as the result of the ingestion of the food which was negligently served on August 12th (matter not established) ;—or (2) that the operation on August 20th was made necessary because of the presence of fecal matter (such necessity not proved), plus evidence that the presence of the fecal matter was caused by the ingestion of the food which was negligently served on the 12th (which was not established). This burden he failed to discharge, even though we consider as part of the evidence the testimony of Dr. Rainone which was excluded.

Judgment is affirmed.