**CRAFT v. KINDER et al.**

No. 13405.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 25, 1936.

Rehearing Denied Oct. 30, 1936.

H. C. McClure and John D. McComb, both of Jacksboro, for appellant.

Conner & Conner, of Eastland, for appellee J. W. Kinder.

W. E. Fitzgerald, of Wichita Falls, for appellees Ben Neher et ux.

BROWN, Justice.

On December 29, 1914, J. C. Jones and wife, Elizabeth Jones, made the following written lease contract with James W. Knox as lessee:

"State of Texas }
"County of Jack }

"Know All Men by These Presents:

"That J. C. Jones, and Elizabeth Jones, his wife, of the County of Jack, State of Texas, for and in consideration of the sum of Sixteen Hundred and Fifty ($1,650.00) Dollars annual rental, paid and to be paid by James W. Knox, as follows, towit:

"825.00 to be paid semi-annually on the first days of January and July of each year, during the terms of this lease, commencing January 1, 1915, have let, remised and rented, and by these presents do let, remise, and rent unto the said James W. Knox, 3,300½ acres of land in Jack County, Texas, on the head-waters of Keechi Creek, about five miles southwest from Jacksboro, comprising the following Surveys: Wm. Allen, B. B. B. & C. R. R. Co., J. M. Henry, J. P. Kemp, Earl Pearce, J. W. Simpson, J. P. Kemp, John T. Henderson, H. J. Wright, J. T. Henderson, comprising all the land embraced in what is known as the J. C. Jones Ranch on Keechi Creek in Jack County, Texas, whether mentioned in the above enumeration of Surveys or not.

"It is expressly understood that this lease shall commence and begin on the first day of January A. D. 1915, and end on the first day of April, A. D. 1918; but it is further agreed that said lessee shall have the prior right to lease the said land at the expiration of this contract provided he

pays as much therefor and offers as good terms as any one else, and the said lessors wish to lease said lands again.

"It is also expressly understood that the above premises are leased to the said Knox for grazing purposes only with the exception of the farming land now situated thereon, which farms may be sub-let by the said Knox to any good and substantial farmer or farmers that he may desire as his tenants. But the said lessee, Knox, shall be responsible to the lessors for the good and husbandmen like manner in which said farm shall be cultivated, and for their good preservation, and to see that said farms are not in any way damaged by said tenants to whom he may rent said farms. But the pasture land on said premises shall not be sub-let to any one by the said lessee; it is also expressly understood that the lessors shall have the right to cut and remove any timbers that they may desire from said premises, but the lessee nor their tenants to whom he may sub-let said lands, shall have no right to cut the wood or timber on said lands, or premises, except so much as may be necessary to be used on said premises, such as repairing the fences, posts, and for fire-wood, and for such other purposes as may be intended to be used by them on said premises:

"It is also expressly understood that no hunting or fishing shall be permitted on said premises except such fishing or hunting as may be done by the lessors, they reserving the right to hunt and fish on said premises as much as they may desire:

"It is also expressly understood that no outside gates shall be made in any of the fences around said premises except such as are already in existence; it is also expressly understood that at the expiration of this lease the lessee shall surrender up the premises unto the lessors in as good a condition as the same now are, the usual wear and tear alone excepted.

"It is expressly understood that the lessors shall have the right to sell this land during the term of this lease; providing that he gives the lessee 90 days notice of said sale; and also provided that the lessee shall have the prior right to purchase said land, providing he pays as much therefor and offers as good terms thereon as any one else shall pay and offer.

"This contract is executed in duplicate, one copy for the lessors and one copy for the lessee.

"Witness our hands this 29th day of December, A. D. 1914.
  "[Signed]    J. C. Jones,
  "Elizabeth Jones,
  "James W. Knox."

By a written memorandum, the contract was renewed on September 19, 1917, as follows:

"This memorandum of an agreement, witnesseth:

"That the foregoing and hereto attached contract of date December 29th, 1914, by which Elizabeth Jones, joined by her husband, J. C. Jones, leases to James W. Knox about 3,300 acres of land in Jack County, Texas, commonly known as the Jones Ranch, is hereby renewed and extended for a period of five years—that is, to say from the 1st day of April, 1918, to the 1st day of April, 1923, on the same terms and provisions, with the following exceptions:

"1. This extension is made in consideration of an annual rental of twenty one hundred and forty five and no/100 dollars ($2,145.00) from and after Jan. 1, 1918, to be paid in semi-annual payments of $1,072.50 each on the 1st days of January and July of each year, commencing Jan. 1, 1918, and a payment of $536.25 Jan. 1, 1923, for the period of January, February and March, 1923;

"2. It is also understood that the lessors are to have the wild fruit and pecans on said ranch during the period of this lease, except such as may be used for home consumption by the lessee or by his representative on said ranch.

"Witness our hands this 19th day of September, 1917.
  "[Signed]    J. C. Jones,
  "Elizabeth Jones,
  "James W. Knox."

On November 26, 1921, by written memorandum, a second renewal and extension agreement was made as follows:

"Know all Men by These Presents:

"That this memorandum of an agreement witnesseth, that the foregoing and attached contract of date December 29th, 1914, by which Elizabeth Jones, joined by her husband, J. C. Jones, leased to James W. Knox about 3300 acres of land in Jack County, Texas, commonly known as the Jones Ranch, as renewed and extended by contract of date September 19, 1917, as

hereby renewed and extended for an additional four years, that is, to say from the 1st day of April, A. D. 1923, to the 1st day of April, A. D. 1927, on the same terms and provisions on which the same is now held, with the following exceptions and conditions:

"1. The lessee shall have the option of subleasing said lands, or any part thereof, but no sublease or contract shall be made by the said J. W. Knox by which he shall be released from his liability to the said lessor, her heirs or assigns, for the semi-annual rentals due under the terms of this lease;

"2. The lessee shall further have the privilege of drilling a well on said land at any time during the life of this lease; and it is expressly agreed that upon the completion of such well the lessee, his heirs or assigns, shall have a credit of this lease as now extended, that is, to say, if said well is drilled the semi-annual payments to become due and payable July 1st, 1923, and on the first days of January and July, of the years 1924, 1925, and 1926, respectively, shall be $1,022.50 each, instead of $1,072.50, and the payment to become due and payable on January 1, 1927, will be $486.25 instead of $536.25, total credit, however, not to exceed cost of the well.

"3. All other provisions of said original lease, as renewed and extended by said extension agreement of September 19th, 1917, to remain in full force and effect through the extended period now provided for—that is to say, to the 1st day of April, A. D., 1927.

"Witness our hands this the 26th day of November, A. D. 1921.

"[Signed]    James W. Knox
"Elizabeth Jones."

On August 4, 1926, a third extension agreement in writing was made as follows:

"The State of Texas⎱
"County of Jack   ⎰
"Know All Men by These Presents:

"That this memorandum of an agreement witnesseth that the foregoing and attached contract of date December 29, 1914, by which Elizabeth Jones, joined by her husband J. C. Jones, leased to James W. Knox about 3,300 acres of land in Jack County, Texas, commonly known as the Jones Ranch, as renewed and extended to the 1st day of April A. D. 1927, by extension agreement attached, is now hereby renewed and extended for an additional five years, that is to say from the first day of April, 1927, to the first day of April, 1932, on the same terms and provisions on which the same is now held, with the following exceptions and additions:

"1. The lessee shall have the option of subleasing said lands, or any part thereof, but no sublease or contract shall be made by the said James W. Knox by which he shall be released from his liability to the said lessor, her heirs or assigns, for the semi-annual rentals due under the terms of this lease.

"2. All other provisions of said original lease as renewed and extended by said extension agreements (excepting the provisions as to the drilling of a well in extension agreement of date November 26, 1921) to remain in full force and effect through the period now provided for—that is to say, to the first day of April, A. D. 1932.

"Witness our hands this the 4th day of August, A. D. 1926.

"[Signed]    James W. Knox,
"Mrs. Elizabeth Jones."

On October 3, 1931, the fourth and last extension agreement was made in writing as follows:

"The State of Texas⎱
"County of Jack   ⎰
"Know All Men by These Presents:

"That this memorandum of an agreement witnesseth that the foregoing and attached contract of date December 29, 1914, by which Elizabeth Jones, joined by her husband, J. C. Jones, leased to James W. Knox about 3,300 acres of land in Jack County, Texas, commonly known as the 'Jones Ranch', as renewed and extended to the first day of April, A. D. 1932, by extension agreements attached, is now hereby renewed and extended for an additional five years, that is to say, from the 1st day of April, 1932, to the first day of April, A. D. 1937, on the same terms and provisions on which the same is now held —with the following exceptions and additions:

"1. The lessee shall have the option of subleasing said lands, or any part thereof, but no sublease or contract shall be made by the said James W. Knox by which he shall be released from his liability to the lessor, her heirs or assigns, for the semi-annual rentals.

"2. That the semi-annual payments to be made on the 1st day of Jany., 1932, and

semi-annually thereafter during the continuance of the five year term of this lease, shall be One Thousand Dollars ($1,000.00) instead of $1,072.50 as now being paid; and $500.00 Jany. 1st, 1937, for Jany. February and March of 1937.

"3. All other provisions of said lease and extensions (excepting the provisions as to the drilling of a well in the extension agreement of date November 26th, 1921), to remain in full force and effect through the period now provided for—that is to say, to the 1st day of April, A. D. 1937.

"Witness our hands this 3rd day of October, A. D. 1931.

. "[Signed]    Mrs. Elizabeth Jones, "James W. Knox."

It will be noted that the first extension agreement is signed by both Mr. and Mrs. Jones, and Mr. Jones having died, the second, third, and fourth extension agreements are signed only by Mrs. Jones. All of the extension agreements are made to and with the original lessee, James W. Knox.

It appears that some time about the year 1921 James W. Knox, original lessee, sold all or a part of the livestock, owned by him and kept on the premises in question, to appellant, W. B. Craft, and by oral contract placed Craft in possession of the premises, and thus undertook to convey to Craft the original lessee's interest in and to the lease contract. After Craft went into possession of the premises, he paid the rents due on the premises annually to a bank in Jacksboro for Mrs. Jones, and, after Mrs. Jones' death, Craft paid such rents to the bank for the estate of Mrs. Jones.

The original lease contract was never placed of record. After Mrs. Jones' death the property was partitioned and a portion of it fell to appellee Mrs. Eva M. Neher, a daughter. On May 31, 1935, Mrs. Neher, joined by her husband, executed a warranty deed, conveying to appellee J. W. Kinder 1,236½ acres of the land which is described in the original lease.

On June 14, 1935, the original lessee, James W. Knox, by written instrument, assigned unto appellant, Craft, all of his right, title, claims, and equities under the lease and under each and all of the terms and provisions of the lease and various extensions thereof.

Appellant, Craft, brought suit in the district court of Jack county against the purchaser, Kinder, and against the owner, Mrs. Neher, and her husband, first contending for specific performance of the contract under the option to purchase same, and, second, in the alternative, for damages sustained by reason of being denied the right to purchase the premises.

The case was tried to the court, and judgment was rendered denying Craft the right to either specific performance or damages. From this judgment the appeal has been taken.

The assignments of error presented are, in substance, as follows: (1) The judgment against the plaintiff is erroneous because, under the undisputed evidence and law, plaintiff was entitled to judgment; (2) the court erred in not rendering judgment for plaintiff for specific performance or for damages; (3) the court should have rendered judgment for plaintiff because the undisputed evidence shows plaintiff to be the lawful assignee and owner of the lease and option contract, and the sale of a portion of the land owned by Mrs. Neher was made without notice to plaintiff and without giving plaintiff an opportunity to exercise his option to purchase, plaintiff being ready, able, and willing to purchase, the defendants having notice and knowledge of plaintiff's right and of his possession of the premises; (4) error is assigned because of the exclusion of certain evidence; and (5) error is assigned because plaintiff was not granted a new trial by reason of newly discovered evidence.

As we see the case, there are two principal questions to be determined: (1) Under the record and facts found here, did the original lessee have the right to assign to the appellant that portion of the original lease contract containing the option to purchase? (2) Was Kinder an innocent purchaser for value and without notice of Craft's asserted rights?

From the record it clearly appears that the lessors, by the terms of the original lease and by the terms of all the extension agreements, intended to hold the original lessee for all rents, and looked to him only for the payment thereof. In the original lease no right to sublet was given, excepting only the tillable lands covered by the lease. In the extension agreements the lessee was given the option of subletting the lands or any part thereof, but was specifically bound for all rents. The lease does not use words showing that it

inured to the benefit of either the heirs or the assigns of the original lessee.

■ We construe this lease to mean that under its terms the original lessee had no legal right to dispose of his interests in the leasehold estate other than to sublet the premises. For this reason the judgment of the trial court should be affirmed.

■ Furthermore, assuming that it is proper to read into the original contract and its several extensions the right to assign all rights, provisions, and covenants contained therein, we are convinced that the judgment should be affirmed, because Kinder was an innocent purchaser for value and without notice of any lawful right asserted by Craft, excepting his right to occupy the premises as a tenant. What notice of Craft's rights could his possession possibly bring to the attention of the purchaser, Kinder, even if followed by the closest of inquiry? Had Kinder, at the time he purchased the property from Mrs. Neher, consulted Craft with respect to his occupancy and his rights, Craft would have told Kinder that he occupied the premises under an oral contract made with the original lessee, Knox, whereby he claimed all the rights and privileges embodied in the original lease and its extensions.

The lease at that time was not recorded in Jack county, and there is nothing in the record to lead us to believe that Kinder was acquainted with its provisions. Furthermore, the oral assignment from Knox to Craft was unenforceable and had no more force and effect at the time of Kinder's purchase than an oral promise to convey the lands by deed would have had. Therefore, even if it could be said that the original lessee had the lawful right to assign the lease and all of its covenants and provisions to Craft, such assignment was not lawfully attempted until after Kinder had purchased from Mrs. Neher.

In the case of Morrow v. Camp (Tex. Civ.App.) 101 S.W. 819, it is held that the consent by a landlord to the subletting of the premises cannot be carried further and made to include a consent to the assignment.

In the case of De Vitt v. Kaufman County, 27 Tex. Civ.App. 332, 66 S.W. 224 (writ refused), the lease contract contained provisions very similar to the provisions of the lease under discussion. The land having been leased by the county to De Vitt and Scharbauer, and Scharbauer having assigned all of his interest in the lease to De Vitt, during the extended term of the lease and without notice to De Vitt, the county sold the land to one Ferrell. The deed specifically recognized the right of the lessees to occupy the premises for the full term. De Vitt brought suit and tendered into court the consideration paid by Ferrell. The Court of Civil Appeals held that the option to purchase granted to De Vitt and Scharbauer was conditional, and was granted only as a protection to the lessees of their right of possession, and that, since the right of possession was not disturbed, no right of recovery existed.

Craft's right of possession has been fully recognized by Kinder.

Under the authorities cited and under the record before us, we overrule all assignments of error and affirm the judgment of the trial court.