**Tom NOVOSAD et al., Appellants,**

**v.**

**James K. CLARY, Appellee.**

**No. 15309.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 20, 1968.

Rehearing Denied Sept. 5, 1968.

W. E. Barron, Navasota, for appellant, Tom Novosad.

Carrington, Johnson & Stephens, Dan McElroy, Dallas, for appellant, Burrus Mills, Inc.

Davis, Davis & Hornbuckle, Wm. E. Hornbuckle, III, Huntsville, for appellee.

PEDEN, Justice.

This is an appeal from the granting of a summary judgment in favor of the defendant, James K. Clary, against the plaintiff, Tom Novosad, and from the granting

of a partial summary judgment in favor of Clary against the intervenor, Burrus Mills, Inc. The trial court severed Mr. Clary's claim for damages against Burrus Mills; such claim is the only part of the controversy still pending in that court.

Appellee asserts that we do not have jurisdiction of this case because of appellants' delay in requesting the record. We granted appellants' motion to extend the time to file the statement of facts and the transcript to March 11, 1968, but appellee urges us to dismiss this cause for want of jurisdiction. Despite our ruling in appellee's favor on the merits of the appeal, we will briefly notice this matter.

Notice of appeal was given in the judgment, which is dated December 27, 1967. Appellants did not file a motion for new trial. On January 25, 1968, cost and supersedeas bonds were filed. On February 5, 1968, intervenor wrote a letter to the court reporter asking her to prepare the statement of facts, and on February 6, 1968, intervenor wrote to the Clerk to ask that a transcript be prepared. These letters were written on the fortieth and forty-first days after the notice of appeal had been given.

Appellants' motion to extend the time for filing the record contains an affidavit by the court reporter stating that she had undergone eye surgery during the week of February 5, 1968, when the statement of facts was ordered, and setting out in detail how her duties as court reporter made it impossible to complete the statement of facts by February 24, 1968. Appellants' motion states that the District Clerk was ill and that the Deputy Clerk knew of the illness of the court reporter and had not begun work on the transcript because she knew the statement of facts would not be prepared on time. Further, the Deputy Clerk thought the transcript need not be made available until the statement of facts was available.

Appellee points out that appellants have given no reason why they waited ten days

after filing their bonds and at least forty days after giving notice of appeal before requesting preparation of the record. We think appellants should have explained this delay. We note, however, the transcript contains a stipulation dated February 6, 1968, that the original exhibits be sent as part of the record to this Court, and that the statement of facts consists of only nine pages in addition to such exhibits, so it would be logical to assume that little time would be required for its preparation or for the preparation of the transcript, which consists of fifty-four pages.

Despite the lack of an explanation of the reasons for the delay, we hold that under the attendant facts and circumstances appellants' request for this short record was made within a reasonable time; we think it reasonable to expect that it could have been prepared within eighteen to twenty days. In exercising our discretion, we seek to avoid a narrow interpretation of Rules 377(c) and 386, Texas Rules of Civil Procedure, and to allow appeals to be heard on their merits when this can be done without significant delay. See Patterson v. Hall, Tex., 430 S.W.2d 483 (1968).

As to the merits of the appeal, Mr. Novosad sought specific performance of an option to purchase certain real property owned by Mr. Clary in Navasota. The option was contained in a written lease of the property to Burrus Mills, and it provided that Burrus could buy the property for $10,527.34 at any time prior to the expiration of the lease on March 31, 1967. Burrus operated a feed store on the leased premises and on the adjoining property. Burrus sold to its manager, Novosad, on credit, its Navasota store including mill machinery and equipment, leasehold improvements, furniture and fixtures, automotive equipment, inventories and leasehold estates. The sales agreement provided that Novosad would assume all of Burrus' rights and obligations under the Clary lease and would hold harmless and indemnify Burrus from further liability with respect to such leasehold estate. Also, that Novo-

sad would timely exercise the option to purchase contained in the Clary lease dated April 1, 1964, and would give Clary notice in writing by January 31, 1967, of his election to purchase the property. Burrus also executed an "Assignment of Lease" to Novosad whereby it sold, transferred, assigned and set over to Novosad such lease, "the estates granted thereby, and all of Burrus' right, title and interest therein and in the premises covered thereby." However, Burrus retained the right to re-enter the leased premises and to be restored to its original position as lessee in the event Novosad should default in the performance or observation of the lease "assigned" to him.

On December 30, 1966, some three months before the lease expired on March 31, 1967, Burrus notified Clary it had assigned its interests in the leased property to Novosad, who would operate the store. On January 9, 1967, and again on February 9, 1967, Novosad notified Clary in writing that he had bought the Burrus lease and wanted to exercise the option to purchase, and on March 25, 1967, he made a cash tender of the full purchase price. The parties disagree as to whether during January and February Clary asked Novosad the basis for Novosad's attempt to exercise the option.

Burrus gave no notice to Clary that it intended to exercise the option and did not tender the purchase price until more than three months after the lease expired on March 31, 1967. Clary did not communicate with Burrus between December 30, 1966, and March 31, 1967.

Appellants say that fact issues have been raised as to whether Novosad, as assignee of the purchase option, had legal standing to exercise such option.

The parts of the "Agreement of Lease" dated April 1, 1964, between Clary and Burrus which are material to this appeal are:

"4. That the Lessee may assign this agreement or underlet the premises or

any part thereof to a financially responsible third person, but Lessee shall not thereby be relieved of its obligations to Lessor hereunder.

"10. It is further provided that the Lessee while not in default hereunder is hereby given by Lessor the option and privilege to purchase the said premises at the end of the term of the demise, for a purchase price of $10,527.34, by giving notice in writing to Lessor of its election to purchase the said premises before the end of the said three-year term. Should Lessee exercise the option granted it by this paragraph, this Agreement of Lease shall be and constitute a contract of sale and purchase of the described premises by and between Lessor and Lessee, and the same may be enforced specifically by either party. The above stated purchase price shall be payable in cash money upon delivery to Lessee by Lessor of a good and sufficient general warranty deed to the property. * * *."

The parts of the "Assignment of Lease" by Burrus and Novosad dated December 30, 1966, which are material to this appeal are:

### III.

"Under date of April 1, 1964, Burrus leased from James K. Clary certain land together with the improvements thereupon, in Navasota, Grimes County, Texas, for a monthly rental of One Hundred Ten Dollars ($110.00), a copy of said lease agreement being attached hereto as Exhibit 'C' and made a part hereof for all purposes as fully as though copied in full in the body hereof.

### IV.

"By AGREEMENT OF SALE AND PURCHASE MONEY SECURITY AGREEMENT dated December 30, 1966, Burrus has agreed to sell, transfer, convey and assign to Novosad certain assets theretofore used by it in conducting a retail feed store business known as Texo Supply Company, there being specifically included in the terms of said Agreement the leasehold estates hereinabove referred to.

"NOW, THEREFORE, for and in consideration of the premises, of the mutual covenants and agreements of the parties hereto, and in consideration of the provisions of said AGREEMENT OF SALE AND PURCHASE MONEY SECURITY AGREEMENT Burrus hereby sells, assigns, transfers and sets over unto Novosad and to his successors and assigns all of said leases, as fully set forth on Exhibits 'A', 'B' and 'C' hereto, and the estates granted thereby, and all of Burrus' right, title and interest therein and in the premises covered thereby. This Assignment is subject to and conditioned upon each and all of the following terms, provisions, covenants and agreements of Burrus and Novosad, to wit:

"A. Burrus warrants to Novosad that said leases attached hereto as Exhibits 'A', 'B' and 'C' are now each in full force and effect as to the respective premises covered thereby and that there exists no event of default under any of the same.

"B. Novosad has fully inspected all of said premises covered by said leases, together with all buildings and improvements thereon, and expressly accepts all of the same in the present condition thereof, respectively.

"C. By his acceptance hereof, Novosad hereby expressly assumes all liabilities and obligations of Burrus as lessee in each of said lease agreements and agrees to perform each of the same fully in accordance with the terms and provisions thereof, respectively, and Novosad further agress to indemnify and hold Burrus harmless from any and all liability resulting from any default by Novosad in the discharge of any of said obligations.

"D. Should Novosad permit or cause to occur any of the events or

conditions specified in paragraph IX. of said AGREEMENT OF SALE AND PURCHASE MONEY SECURITY AGREEMENT with the result that Burrus may, at its option, declare all indebtedness owing it by Novosad to become immediately due and payable, or should Novosaid default in the performance or observance of any covenant or obligation as lessee under any of said lease agreements attached hereto as Exhibits 'A', 'B' and 'C', then, in any such event, Burrus shall have the right, at its option, to re-enter the leased premises assigned hereby and to remove all persons and property therefrom without being deemed guilty of any manner of trespass and shall have the right, at its option, to be restored to its original position as lessee under each of said lease agreements."

The parts of the "Agreement of Sale and Purchase Money Security Agreement" between Burrus and Novosad which are material to this appeal are:

### I.

"Burrus hereby grants, bargains, sells and conveys to Novosad, effective at 12:01 o'clock A.M. on January 1, 1967, the following properties:

"A. All feed mill machinery and equipment, all mill and warehouse machinery and equipment, all furniture and fixtures, all leasehold improvements, and all motive equipment now in use by Burrus in connection with its operation of Texo Supply Company in Navasota, Texas. Attached hereto as Exhibit 'A' is a general listing of all such assets referred to in this paragraph I. A.

"C. All leasehold estates used and possessed by Burrus in Navasota in connection with the operation of Texo Supply Company, as more particularly described hereinafter.

### II.

"Novosad hereby agrees to purchase the properties described hereinabove in Section I. and to pay for them in the amounts and at the times hereinbelow specified:

"* * *

"C. For the leasehold estates referred to in paragraph I. C. above, Novosad shall pay no cash consideration but rather shall assume all of Burrus' rights and obligations thereunder at the effective date hereof and shall hold harmless and indemnify Burrus from all further liability with respect to such leasehold estates thereafter. Additionally, Novosad expressly covenants and agrees that he:

"(i) Will timely exercise the option to purchase contained in the lease from James K. Clary dated April 1, 1964, a true and correct copy of which is attached hereto as Exhibit 'C';

"(ii) Will give notice in writing to the said James K. Clary of his election to purchase the property described in Exhibit 'C' not later than January 31, 1967, sending a copy thereof to Burrus; and,

"(iii) Will, after purchasing such property, grant to Burrus a second deed of trust lien thereupon to further secure the performance by Novosad of all of his covenants and obligations hereunder."

### VIII.

"* * * In the event Novosad shall fail to perform any of his obligations hereunder, Burrus, at its option, may perform the same, * * *."

It is noted that since Burrus had the right of re-entry, Novosad was only a sublessee under the lease and not an assignee of it. Davis v. Vidal, 105 Tex. 444, 151 S.W. 290, 42 L.R.A.,N.S., 1084 (1912). There is no privity of contract between a sublessee and the original lessor. Zeidman v. Davis, 161 Tex. 496, 342 S.W.2d 555 (1961); Amco Trust, Inc. v. Naylor, 159 Tex. 146, 317 S.W.2d 47, 73 A.L.R.2d 1109 (1958). "And so it is held that a sub-lessee does not acquire or succeed to the option

of a lessee to purchase the premises, Craft v. Kinder, Tex.Civ.App., 97 S.W.2d 501, writ dismissed; Lehrer v. Wegenhoft, Tex. Civ.App., 203 S.W.2d 245, writ refused, n. r. e., * * *" Zeidman v. Davis, supra.

■ We overrule appellants' first point. Even though Novosad had contracted with Burrus to assume all of Burrus' rights and obligations under its lease from Clary and to hold harmless and indemnify Burrus from all further liability with respect to the leasehold estates, and this gives Clary a right of action against Novosad as a "creditor beneficiary" for a breach of the lease, as pointed out in Jones v. El Paso Natural Gas Products Co., 391 S.W.2d 748 (Austin, Tex.Civ.App.1965, writ ref., n. r. e.), there is still no privity between Clary and Novosad. We find no Texas authority holding that a sublessee can require the original lessor to convey to him the demised premises by reason of a purchase option secured to the original lessee.

Appellants' second point states that fact issues have been raised as to whether Clary is estopped to assert that Novosad lacked legal standing to exercise such purchase option or that Burrus' exercise thereof was too late.

Appellants' affidavits and pleadings state that they spent several thousand dollars on equipment and leasehold improvements and made other specified expenditures in reliance on the purchase option. Also, that Novosad was not advised by Clary during the life of the option as to the reason for Clary's refusal to accept the cash tender and that Burrus first learned in July, 1967, that Clary claimed Novosad had no standing to exercise the purchase option. Burrus' position is that it was ready, willing and able to take up the option at all times between January, 1967, and March 31, 1967, but thought it could not do so because it had assigned the option to Novosad; when it learned that Clary contended Novosad could not exercise the option it promptly intervened and deposited the option price proceeds in the registry of the court.

It is uncontroverted that: 1) Clary's attorney in January, 1967, requested of Novosad a copy of any instruments whereby he purchased Burrus' rights under the lease. 2) In February Novosad's attorney sent to Clary's attorney only that part of the "Agreement of Sale and Purchase Money Security Agreement" set out above as II C. and paragraphs (i) and (ii) under it. None of the "Assignment of Lease" was sent at that time. 3) The "Assignment of Lease" was sent to Clary's attorney on May 10, 1967.

Clary's attorney says he was unable to advise his client of his rights under the instruments until after the expiration of the lease and option when he first got copies of the instruments in question. He did not know what they contained, so he could not have made a false representation or concealment of the material fact that they gave Novosad no standing to exercise the option and that Burrus alone had such standing. As to Novosad, Clary openly refused his tender.

Clary says there was no reliance by Burrus, as it admitted in its pleadings and affidavits that it relied on its attorney's advice that it could not exercise the option.

■ We overrule appellants' second point. We find nothing which would raise a fact issue as to any false representation or concealment of any material fact on the part of Clary or as to any reliance thereon by appellants. Clary had no duty to tell Burrus that which he did not then actually or constructively know: that only Burrus could exercise the option. Crews v. General Crude Oil Co., 287 S.W.2d 243 (Beaumont, Tex.Civ.App.1955, no writ).

Appellants' third point is that fact issues have been raised as to whether Burrus' exercise of the purchase option was timely made under the circumstances.

■ Burrus' tender of the funds was made three months after the expiration of the option, and its position is that the only reason it was late in doing so was its be-

lief that Novosad was the only one who could exercise the option. We find no fact issues raised, and we overrule this point. The reason given does not excuse its failure to timely act.

The judgment of the Trial Court is affirmed.

Affirmed.