**REEVES COUNTY GAS COMPANY,
Appellant,**

v.

**Virgil I. CHURCH, Appellee.**

**No. 6099.**

Court of Civil Appeals of Texas,
El Paso.

Feb. 3, 1971.

Kerr, Fitz-Gerald & Kerr, William M. Kerr, Midland, for appellant.

Johnson & Dionne, Hart Johnson, Paul Dionne, Fort Stockton, for appellee.

## OPINION

WARD, Justice.

This is an appeal from judgment awarding Virgil I. Church damages for losses sustained to his irrigation engines, pumps and crops on his farm during the year 1967 and allegedly caused by the negligence of the appellant in furnishing unclean natural gas. The judgment of the trial court is reversed and the case is remanded for a new trial.

The case was submitted to a jury which found, in answer to special issues submitted, the following: (1) that the natural gas furnished by the appellant during the year 1967 for use by Church in his gas engines was "not clean and merchantable gas"; (2) that the furnishing of "unclean and unmerchantable gas" was negligence; (3) that the "unclean and unmerchantable gas" was a proximate cause of the damages to appellee's natural gas engines; (4) that the amount of damages to the natural gas engines was the sum of $13,250.52; (5) that the "unclean and unmerchantable gas" was a proximate cause of damages to appellee's pumps and gearheads; (6) that the amount of damages to the pumps and gearheads was the sum of $500.00; (7) that the "unclean and unmerchantable" gas was a proximate cause of damages to the appellee's "Sweet Sue" crop; (8) that the amount of damages to the "Sweet Sue" crop was the amount of $7,620.00. Judgment was thereupon rendered for Mr. Church in the amount of $21,370.52.

In his farming operations Mr. Church had five deep irrigation wells with deep turbine pumps for the purpose of irrigating the farm. The industrial engines attached to the pumps had carburetion systems designed to use natural gas as fuel, and for several years Mr. Church had purchased this gas from Comanche Gas Company. The appellant bought out the prior gas company and started furnishing natural gas to the Church farm beginning in February 1967 and under the terms of the Comanche Gas Company contract. According to Mr. Church, his troubles with his engines started from the beginning of the crop year, when the engines would run rough, would die, and when it was apparent that more repairs were being made on the engines than had been made over any previous years. In April or May it was determined by Mr. Church that some sort of foreign matter, appearing as crude oil, was being carried in the gas lines to the

engines. Several complaints were made by Church to representatives of the appellant, who ignored all complaints, until finally, in the latter part of July, a representative of the appellant went out to the farm. At this time the appellant undertook to correct the situation by installing a trap or filter in the gas line where it enters into the farm, in order to remove the crude oil. Thereafter, on two or three occasions the trap was cleaned out by the appellant's representative until, on September 1st, Pecos Growers Gas Company entered into a gas sales contract with Church under which they became obligated to furnish gas to the farm which would be "clean and merchantable" for use "as fuel for engines used in pumping water for irrigation purposes", and under which contract the gas for the balance of the irrigation year was furnished.

Appellant's first points can be summarized as being to the effect that there is no evidence or proof offered as to any duty owed by the appellant to the appellee, nor a breach of any duty. At no time did the appellee offer into evidence the terms, specifications and provisions of the contract between the parties to this suit. The only contract offered into evidence was the one dated September 1, 1967, being the one between Pecos Growers Gas Company and Mr. Church, and being the one entered into after the appellant had passed out of the picture. This is the first one in evidence where any obligation is ever mentioned that gas would be furnished that would be "clean and merchantable" for use as "fuel for engines used in pumping water for irrigation purposes."

■■ In the absence of proof of duty, no cause of action for negligence will lie. 38 Am.Jur., Negligence, § 12, p. 652 et seq. Of course, the burden of proving the duty lies with the plaintiff. 38 Am.Jur., Negligence, § 285, p. 973 et seq. If there is no duty, there can be no negligence, and the only legal duty present in the situation is the one which would arise out of a contract relationship between the parties. As

to this elementary law, the Supreme Court, in Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508 (1947), quoting from 38 Am.Jur. sec. 20, p. 662, stated:

> " 'A contract may create the state of things which furnishes the occasion of a tort. The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract. Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care. Thus, a person who contracts to make repairs can be held liable for his negligence in doing the work. * * * ' "

The appellee's testimony to the effect that he complained about the oil in the gas from April on until the end of July without the appellant doing anything, is consistent with a no-duty obligation on the part of the appellant. The contract could have been to furnish a casinghead gas, a sour gas, or one containing a specified per cent of liquid, as far as the record before us is concerned. However, at the end of July the appellant did attempt, under the record, for no consideration, to install a filter or trap in an effort to eliminate the complaints. Here, a legal duty did arise, because of the legal duty to act with care arises whenever an affirmative course of action is undertaken, even though the service rendered is gratuitous. Rick Furniture Co. v. Smith, 202 S.W. 99 (Tex.Civ.App., Dallas 1918); Bolin v. Tenneco Oil Co., 373 S.W.2d 350 (Tex.Civ.App., Corpus Christi 1963, error ref'd, n. r. e.). Being informed of the burned-out motors, and parts from the oil, and having undertaken to remove the oil from the gas by the in-

stallation of the trap, liability could arise from the installation of an inadequate or defective trap. This case was tried and submitted on the negligence theory alone.

■ There being a possible duty and a possible breach in the furnishing of a defective or inadequate trap or in failing to remove the liquid from the gas, we next come to a consideration of the appellant's points relating to manner of submission of the duty and its breach on the basis "clean and merchantable gas". The contract dated September 1, 1967, using these terms, has no bearing on the contractual duty under which the appellant operated. The court's action in overruling the objections to the charge was error.

■ Complaint is next made by the appellant regarding the lack of proper proof as to all items of replacements and repairs to the engines, pumps and gearheads. Mr. Church owns the West Texas Equipment Company, a dealer in tractors and irrigation equipment, and it was this company that made the repairs and furnished the replacements and labor. Beginning at the start of the year 1967 and until after the completion of the year, the items of repairs of the five well locations were placed into evidence by the appellee. The 1967 work orders alone are in excess of $23,458.29. Without going into detail, literally hundreds of items cover repairs and replacements made in the eight months before August, 1967, during August, 1967, and after September 1, 1967. Many are proved to the extent of being reasonable and necessary; many are proved to the extent of being reasonable without proof of being necessary; many are proved on standards relating to "could be" or "possibly". Some are proved as being caused by oil in the lines; others not. Some are proved correctly as relating to the time when a breach of duty by the appellant had been established, but most relate to the time when no duty or any breach has been proved. But all the appellant has done in defense of this was to make a general objection to the submission of the charge. No objection was ever made by the appellant to any proof of any invoice; to any proof of unrelated causal connection as to any particular item, or to any incorrect standard of proof. In the state of the record made by the appellant in this case, to expect a trial court to weed out what was incorrectly proved is impossible. The points are overruled. We make this observation realizing that in another trial the matters probably will be correctly proved and that the appellant will aid the trial court with proper objection to the evidence and with specific objections to the charge.

Other errors are correctly raised by the appellant, but are not discussed, as they will probably not occur upon a re-trial of this case.

■ ■ The "no evidence" points as to no duty and breach, are sustained as to the time period up until the time that the appellant undertook to install the trap, but are overruled thereafter; and in so doing, we have complied with the criteria set forth in Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). The wrong standard of duty was submitted to the jury under the evidence presented, and the trial court was in error in this regard. However, by one of the appellant's own objections it does appear that there might be in existence a written contract between the parties that could establish a duty owed by the appellant covering the entire year 1967. In the interest of justice, the case should be remanded to ascertain the terms of the contract at a new trial. Rule 434, Texas Rules of Civil Procedure; National Life and Accident Insurance Co. v. Blagg, 438 S.W.2d 905 (Tex.1969).

Therefore, the judgment of the trial court is reversed and the cause is remanded for a new trial.

RAMSEY, C. J., not sitting.