**Charles Ray OLDAKER, Appellant,**

v.

**LOCK CONSTRUCTION COMPANY et al., Appellees.**

**No. 8550.**

Court of Civil Appeals of Texas, Amarillo.

Aug. 29, 1975.

Rehearing Denied Oct. 14, 1975.

Splawn Law Offices, Inc., Carroll Cobb, Lubbock, for appellant.

Little & Little, Jack Little, Big Spring, Key, Carr, Evans & Fouts, Donald M. Hunt, Crenshaw, Dupree & Milam, Lubbock, for appellees.

ELLIS, Chief Justice.

Plaintiff, Charles Ray Oldaker, brought suit for damages for personal injuries sustained when a joint of oil field line pipe struck him while the pipe was being loaded onto the tractor-trailer tandem rig which he drove for Billy Walker Trucking Company.

Billy Walker Trucking Company was requested by defendant, CP Construction Company, to deliver line pipe to a pipeline construction site in eastern New Mexico. CP Construction Company was under a written contract with defendant, Mobil Pipeline Company, to construct the pipeline. The site of the alleged injury was the Mallet Tank Farm, an oil field equipment facility maintained by Mobil Pipeline Company near Sundown, Hockley County, Texas. Defendant, Lock Construction Company, was under contract with Mobil Pipeline Company to clean and rework oil field pipe for reuse.

At the conclusion of plaintiff's evidence, the trial court withdrew the case from the jury and rendered judgment that the plaintiff and intervener, Hartford Insurance Company, take nothing by their suit on the basis of defendants' motions for instructed verdict. Affirmed.

Plaintiff-appellant predicates his appeal on one point of error urging in effect that the trial court erred in holding that no question of fact of actionable negligence, upon which the appellant's case is premised was raised by the evidence. Defendants-appellees respond, initially, with a motion to dismiss the appeal for want of jurisdiction because of failure to timely file the transcript and statement of facts, or, in the alternative to strike the statement of facts as untimely filed. Appellees further respond with various counterpoints.

Under the provisions of Tex.R.Civ.P. 386 appellant filed a motion to extend time to file the transcript and record on November 22, 1974, seventy-four days after appellant's motion for new trial was overruled by operation of law. Tex.R.Civ.P. 329(b). Appellant's motion was granted the same day as filed extending the time to file the transcript and statement of facts to November 29, 1974, a period of seven days.

On November 26, 1974, the transcript was received and filed by the clerk of this Court; the statement of facts was re-

ceived by the clerk on December 2, 1974 in an envelope postmarked November 27, 1974. The transcript and statement of facts were deemed filed within the extended period, even though the statement of facts was not received by the clerk until after the expiration of the extended period. Tex.R.Civ.P. 5, 386.

Since appellant's motion was timely filed under Tex.R.Civ.P. 386, a consideration of the grounds asserted therein was left to the sound discretion of this Court to determine whether good cause was presented to grant the motion. *Patterson v. Hall*, 430 S.W.2d 483 (Tex.1968); *Parks v. Purnell*, 135 Tex. 182, 141 S.W.2d 585 (1940). Whether good cause exists is a factual determination based upon all the peculiar circumstances surrounding the delay in filing, and the recognized basis for setting aside such a determination is upon the establishment of arbitrary action or an abuse of discretion. *Patterson v. Hall, supra; Wigley v. Taylor*, 393 S.W.2d 170 (Tex.1965).

In applying Rule 386 to the facts it is proper that we seek to avoid a narrow construction to the end that the appeal can be heard on the merits. *Parks v. Purnell, supra; Novosad v. Clary*, 431 S.W.2d 422 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ dism'd). Particularly, a narrow construction will be avoided where excuse of the delay will not cause harm to any party. *City of Corpus Christi v. Gregg*, 267 S.W.2d 478 (Tex.Civ.App.—San Antonio 1954, no writ). In the instant case no harm is alleged to have resulted from the granting of appellant's motion to extend time to file.

By sworn statement contained in the motion to extend time, counsel for appellant related that on October 15, 1974, he mailed a properly executed written request for transcript with proper address and postage affixed, directed to the district clerk. By further statement of appellant's counsel and by affidavit of the district clerk, on the following day, October 16, counsel had a conversation with the clerk concerning the transcript. In that same conversation, the district clerk indicated to counsel that the written request had not been received. Since it had been mailed on the previous day, counsel believed that it would soon be received by the clerk. In fact, the written request mailed by counsel on October 15 was not received, and, after the expiration of sixty days from the date appellant's motion for new trial was overruled, the district clerk mailed the cost bill to counsel, the clerk having assumed that the appeal had been abandoned.

A second written request for the transcript was filed with the district clerk on November 21, 1974, the seventy-third day after motion for new trial was overruled.

We have examined many cases and have found none with facts analogous to the facts in this case. We have found in *Harrison v. Benavides*, 327 S.W.2d 610 (Tex.Civ. App.—San Antonio 1959, no writ), that the question of jurisdiction has been conveniently divided into three categories as follows:

(1) Where the record has not been filed in this Court within sixty days from the date of judgment and no motion is filed within seventy-five days, or a motion having been granted, the record is not filed within the time allowed under the terms of the order; (2) where the motion, together with the affidavits, shows on the face of the record that the transcript and/or statement of facts, as the case may be, could have been filed within the time allowed by the rule, and thus the motion is insufficient as a matter of law; (3) where the record has not been filed within the sixty-day period provided by Rule 386, T.R.C.P., but a motion has been timely filed which attempts to show "good cause" why the record could not be filed within the sixty-day period, thus presenting a fact issue to be determined by the Court of Civil Appeals.

The facts of the instant case do not fall within either of the first two categories. Here, a timely motion was filed which raised a fact issue of good cause, i. e., why

the transcript *could not* be filed within the sixty-day period under Rule 386. Certainly, the motion and affidavit do not show on the face of the record that the transcript could have been filed within the sixty-day period. The district clerk did not receive a written request for preparation of the transcript until after the expiration of the sixty-day period. We do not, in the instant case, have facts that show the transcript was completed and ready to be filed before the expiration of the sixty-day period.

The Supreme Court in *Patterson v. Hall*, supra, focused on the distinction between fact situations as under *Matlock v. Matlock*, 151 Tex. 308, 249 S.W.2d 587 (1952), category (2) above, where the transcript or statement of facts was in the counsel's possession, ready to be filed, but was not timely filed, and fact situations such as the instant case where counsel did not have the transcript in his possession within the sixty-day period, and therefore, could not have filed the same within that period. The Supreme Court went on to hold that the Court of Civil Appeals in *Patterson* was in error in holding as a matter of law that since the appellants did not show that they *could not have obtained* the statement of facts for filing within the sixty-day period, they failed to show that they could not have filed the statement of facts within the required period.

■ The Court in *Patterson* further stated that appellant must promptly request the preparation of the statement of facts after giving notice of appeal. The same rule of promptness applies to the time for requesting the preparation of the transcript in the instant case. Tex.R.Civ.P. 376. However, the determination of "promptly" is not limited by any fixed number of days; rather, it is a determination made upon relative factors. The rule of promptness restated in *Patterson* is one of reasonable time when all attendant facts and circumstances surrounding the act to be performed are considered. The Court in *Patterson* avoided the application of a narrow and arbitrary meaning of the word

"promptly." The Court instead reiterated that the Court of Civil Appeals ". . . has a duty to decide, in the light of all attendant facts and circumstances, the preliminary question of whether the request for the record was made within a reasonable time after notice of appeal was given." *Patterson v. Hall*, supra, at 486. This duty to decide calls upon the sound discretion of the Court to make a determination which has some rational basis in fact.

We recognize that appellant's counsel did not exercise exemplary diligence in all respects. However, we note that upon becoming cognizant of the true situation and since the seventy-five day period had not expired, appellant's counsel proceeded to again make written request to the district clerk to prepare the transcript and to seek the extension of time which was granted.

■ We believe that from a full consideration of all the peculiar circumstances of this case, including the absence of a showing of harm, it has not been established that this Court acted arbitrarily or abused its discretion in granting the extension.

Alternatively, appellee asks that the statement of facts be stricken as untimely filed. It is well settled that timely filing of the transcript confers jurisdiction on the Court of Civil Appeals to consider the appeal even if the statement of facts is never filed. *Root v. Hester*, 309 S.W.2d 480 (Tex. Civ.App.—Eastland 1958, writ ref'd); *Franke v. Franke*, 373 S.W.2d 891 (Tex.Civ. App.—Corpus Christi 1963, no writ); *Darden v. Davies*, 217 S.W.2d 892 (Tex.Civ.App. —Amarillo 1949, no writ); Reynolds, Texas Rules of Civil Procedure 385 and 386: Whether to Extend the Definitive Time for Filing the Appellate Record, 4 Tex.Tech.L. Rev. 1 (1972).

■ The filing of the statement of facts is not jurisdictional. Even though the statement of facts may have been "ready" within the sixty-day period, the filing thereof within such period would have been of no avail since it was the timely filing of

the transcript that invoked appellate jurisdiction. Also, the motion for extension included, and the granting thereof was effective as to both the transcript and the statement of facts. *Embry v. Bel-Aire Corporation*, 502 S.W.2d 543 (Tex.1973); Figari, Texas Civil Procedure, 28 Sw.L.J. 248 (1974).

Appellees' motion to dismiss for want of jurisdiction, or, in the alternative to strike the statement of facts, is overruled.

On April 3, 1972, plaintiff and George Wilson, a helper, known in the oil field business as a swamper, left the Billy Walker Trucking Company at Hobbs, New Mexico in a tractor-trailer rig en route to the Mallet Tank Farm in response to the previous request made by the owner of CP Construction Company. Plaintiff and his swamper and another Billy Walker truck driven by Lloyd Smith arrived at the Mallet Tank Farm at approximately the same time. A foreman and supervisor for CP Construction Company, James A. Smith, met the men from Billy Walker Trucking Company, directed them into the yard and located the designated pipe to be loaded. Lloyd Smith's truck was loaded first, by hand, the pipe being rolled onto the trailer or float from a piperack. The pipe was in forty or forty-five foot joints with an inside diameter of four inches. Each joint weighed about 320 pounds, and the pipe was laid on the truck in layers, stacked six or seven layers high when fully loaded. The pipe was held in place on the flat surface of the float by steel weevil pins which were about twelve inches high placed along each side of the float in sockets provided for that purpose. Two or three weevil pins were placed on each side of the float to prevent the loaded pipe from rolling off.

The pipe that was to be loaded onto the plaintiff's truck was not stored on a rack, but was lying on the ground. Mobil had requested that Lock furnish a caterpillar-type tractor equipped with a side boom, and an operator for the tractor, to load the pipe onto the Billy Walker trucks. An A-shaped boom was attached to the side of the tractor, and a cable ran from a winch on one side of the tractor through a pulley at the top of the boom on the opposite side of the tractor. At the end of the cable which hung from the pulley was a hook to which the bundle of four, five or six joints of pipe was attached by wrapping the cable and a securing chain, made of four or five-inch links, around the bundle of pipe. The bundle of pipe was held, nearly balanced, at the center of the load. The operator of the side boom loader by means of a power driven winch lifted the load of pipe off the ground high enough to pass over the back end of the float, the side boom loader passing along the side of the float until the pipe hung about one or one and one-half feet over the front of the float. After the pipe was lowered into position on the float of plaintiff's truck, the cable was loosened so that the securing chain could be pulled out from underneath the load of pipe.

At the time plaintiff's truck was being loaded with the side boom loader, plaintiff and his swamper, George Wilson, were standing on the back of the truck tractor between the front of the float and the cab of the truck. Oldaker and Wilson were positioned to aid in straightening and stacking the pipe on the float after it had been lowered by the side boom loader. Two or three layers of pipe had been positioned on the float by operation of the side boom loader aided by Oldaker and Lloyd Smith who were using lengths of pipe called cheater pipes to pry loose the pipe joints from the bundle so that they could be shifted into position on the float. Lloyd Smith was standing behind the float near the opposite end from which Oldaker stood. The swamper's job was to pull the chain from around the pipe when the side boom operator loosened the cable. A knot in the cable held the chain to the cable. After the chain and cable were unhooked, the side boom operator pulled the chain and cable out from under the bundle of pipe. It was during this particular stage of the loading

process, as the knot in the cable was being pulled up, that a joint of pipe at the top of the bundle rolled off the bundle and caught on the weevil pin at the center of the side of the float nearest the side boom loader. The far end of the pipe from Oldaker struck the ground, and the near end at the same time bounced up striking Oldaker about the head. As Oldaker sank to a crouching position, apparently unconscious, Lloyd Smith and George Wilson caught him and lifted him off the truck before he fell to the ground.

The pleadings on which plaintiff went to trial alleged that each of the defendants was guilty of negligence in six respects, the substance of which was that the defendants breached their duty to carry out the pipe loading operation in a reasonably safe manner and that the loading equipment used by the defendants was not adequate for the operation. Plaintiff further alleged that each of the above acts of negligence was a proximate cause of the injuries he sustained. Defendants answered by asserting voluntary assumption of risk, contributory negligence, borrowed servant and fellow servant doctrine, unavoidable accident, and causation unrelated to acts of defendants.

At the conclusion of plaintiff's evidence, defendants presented a motion for an instructed verdict based upon the contentions, among others, that no evidence had been presented showing breach of a legal duty which was the proximate cause of plaintiff's injuries.

Appellant contends that the pleadings and the evidence raise fact issues of duty, breach of that duty, and proximate cause that should have been submitted to a jury. Appellant correctly contends that on appeal from a judgment based on an instructed verdict, all the evidence and the inferences drawn therefrom, must be examined in the light most favorable to the party against whom the peremptory instruction was given. *Glenn v. Prestegord,* 456 S.W.2d 901 (Tex.1970); *White v. White,* 141 Tex. 328, 172 S.W.2d 295 (1943); *Godwin v. Roberts,* 213 S.W.2d 571 (Tex.Civ.App.—Galveston

1948, writ ref'd n. r. e.); *Hotchkiss v. Texas Employers' Insurance Ass'n,* 479 S.W.2d 336 (Tex.Civ.App.—Amarillo 1972, no writ).

■ In order to raise issues for jury submission, the plaintiff must present evidence of probative force on all of the essential elements of a negligence cause. Plaintiff must establish that the defendant owed him a legal duty that was breached, proximately resulting in the injuries suffered by plaintiff. *Cody v. Mahone,* 497 S.W.2d 382 (Tex. Civ.App.—San Antonio 1973, writ ref'd n. r. e.); *Webb v. City of Lubbock,* 380 S.W.2d 135 (Tex.Civ.App.—Amarillo 1964, writ ref'd n. r. e.); *White v. Jackson,* 358 S.W.2d 174 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.).

■ Initially, the appellant must establish that one or more of the appellees owed a legal duty to him that could have been breached. *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975); *Coleman v. Hudson Gas and Oil Corporation,* 455 S.W.2d 701 (Tex.1970); *McCall v. Marshall,* 398 S.W.2d 106 (Tex.1965); *Webb v. City of Lubbock,* supra. The determination of the existence of a legal duty is a question of law for the court. Such a determination is based upon the facts surrounding the occurrence in question. *Webb v. City of Lubbock,* supra; *City of Bryan v. Jenkins,* 247 S.W.2d 925 (Tex.Civ.App.—Waco 1952, writ ref'd n. r. e.).

We note that the record supports appellant's assertions that certain legal relationships existed between appellant and some or all of the appellees, and, although we recognize that these alleged relationships can give rise to legal duties not to create unreasonable risks of harm, in this case the particular events which resulted in appellant's injury were under the control of appellant.

It is undisputed that appellant or his swamper, George Wilson, gave the hand signals which guided the side boom operator in placing each pipe load on the float. It was Oldaker or his fellow employee Wilson

who positioned the pipe load before it was lowered onto the float. It is further undisputed that Oldaker, and his fellow employees, George Wilson and Lloyd Smith, disengaged the hook and cable from the pipe load and pried the joints of pipe loose from the bundle to scatter them into place.

By appellant's admission he was the person in authority with respect to the manner of loading his tractor-trailer rig. We note the testimony by James Smith, foreman for CP, that CP had the contractual responsibility with Mobil to secure the line pipe and see that it was moved to the construction site. Smith further testified that he understood that someone other than the drivers would load the pipe on the occasion in question. However, we believe that the determinative right of control in this case was with respect to the specific events constituting the loading operation. When asked whether he had the authority on the day in question to stop an unsafe loading procedure, appellant replied that he had such authority. Indeed, testimony from appellant was that it was customary in the oil field business that the truck driver was the one in charge of loading his own rig, and that if he does not want a joint of pipe loaded in a particular manner, it is the truck driver who directs the desired manner of loading. When asked whether appellant exercised his authority on the occasion in question, he replied that he did not, but upon further inquiry he admitted that he could have ordered the loading to be stopped if the procedure was unsafe.

There is testimony that the CP foreman designated the pipe to be loaded and directed the positioning of the Billy Walker trucks. There is also testimony that he helped tally or count the pipe that was loaded and that a Mobil employee assisted in picking up the first load of pipe. But there is no evidence that either of them exercised any authority over the loading and unloading of pipe or that the CP foreman would have refused to allow appellant or Lloyd Smith to use one of the Billy Walker trucks equipped with an A-frame type gin pole attachment behind the cab of the truck, which, appellant asserts, was the safer equipment for this type of loading operation. The testimony of Lloyd Smith was simply that the CP foreman would not respond when Smith asked to use the truck with gin pole attachment. There is no evidence that appellant could not have taken the initiative to use the truck with gin poles or have directed that the loading procedure be stopped altogether. The only testimony with reference to authority for loading safety is from appellant, admitting that he had such authority.

■ The furnishing of the side boom loader and operator by appellee, Lock, at the request of appellee, Mobil, did not impose upon them a legal duty since both the loader and the operator followed the directions given by appellant or George Wilson throughout the loading process. We find that no affirmative action had been taken by any of appellees in connection with the loading process after appellant, Lloyd Smith and George Wilson undertook to direct the loading of appellant's rig.

■ Under the facts in this case we hold that no legal duty of care was owed to the appellant by any of the appellees. Negligence is the failure to observe a legal duty. Where no duty exists, no legal liability can arise on account of negligence. *McGuire v. Overton Memorial Hospital,* 514 S.W.2d 79 (Tex.Civ.App.—Tyler 1974), writ ref'd n. r. e. per curiam, 518 S.W.2d 528 (Tex.1975); *Cody v. Mahone,* supra; *Reeves County Gas Company v. Church,* 464 S.W.2d 489 (Tex. Civ.App.—El Paso 1971, no writ).

Since the existence of a legal duty is a condition precedent to the establishment of negligence, and, we have found "no duty," it is not necessary to reach questions regarding other elements of actionable negligence. However, in the event it should be determined that there was a breach of a legal duty owed to the appellant by any of the appellees, we would hold that the evidence in this case fails to raise a fact issue of proximate cause.

■ In order to impose liability on any party, at trial appellant had the burden of proving the breach of duty and its causal connection with his injuries. *Glenn v. Prestegord,* supra; *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779 (1949). The mere fact of duty, breach and subsequent injury cannot establish proximate cause. *Bowles v. Bourdon,* supra. Proximate cause must be proved as a vital fact by evidence of probative force. *Thoreson v. Thompson,* 431 S.W.2d 341 (Tex.1968); *T–L Drilling Company v. Northern Propane Gas Co.,* 516 S.W.2d 710 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Calhoun v. Padgett,* 409 S.W.2d 890 (Tex.Civ.App.—Tyler 1966, no writ).

■ Proximate cause consists of two elements: cause in fact and foreseeability. Both elements must combine to establish proximate cause. *Clark v. Waggoner,* 452 S.W.2d 437 (Tex.1970); *Enloe v. Barfield,* 422 S.W.2d 905 (Tex.1967); *Baumler v. Hazelwood,* 162 Tex. 361, 247 S.W.2d 560 (1961). Even if we assume that testimony established that the side boom loader was inadequate for the loading operation creating an unreasonable risk of harm that was or should have been foreseen by one of more appellees, appellant still must show cause in fact, i. e., that but for the use of the side boom loader, the accident would not have occurred. *Baumler v. Hazelwood,* supra. From a review of the evidence in the light most favorable to appellant's position, we find no evidence of probative force to raise an issue of cause in fact.

■ The crux of appellant's argument is that the use of the less preferred side boom loader rather than the more preferred gin pole equipment, even after he had expressed his concern to Lloyd Smith, and Lloyd Smith had expressed his concern about the use of the side boom to the CP foreman, was the cause in fact of his injuries. To complete the requisite elements of proximate cause, appellant must show that each of the appellees against whom he seeks recovery should have foreseen an un-

reasonable risk of harm in using the side boom loader for the loading of pipe from the ground in the Mallet Tank Farm. The evidence in the record would allow a jury to do no more than to speculate that the use of the side boom loader caused the joint of pipe to bounce and strike Oldaker and that if the side boom loader had not been used, the joint of pipe would not have struck Oldaker. *Baumler v. Hazelwood,* supra.

Oldaker testified that weevil pins were in place along the side of the float nearest the side boom loader. The weevil pins were not extended by the addition of cheater pipes, but according to Lloyd Smith, the height of the weevil pins, alone, was greater than the height of the last layer of pipe loaded. In fact, the center pin did catch the joint of pipe that struck Oldaker causing one end to bounce and the other end to strike Oldaker. Appellant argues that because the side boom was approximately two and one-half feet from the edge of the float, or at least was not resting against the edge of the float, the falling joint was not halted as it spun against the center weevil pin.

Although the evidence is plain that the side boom did not catch the falling pipe, testimony that the gin poles would have rested against the float and thus would have caught the bouncing pipe is only speculation after the fact and does not constitute evidence of probative force. Such contention by the appellant relates to the manner of operation of the loader rather than to its inadequate design, and is susceptible only of speculation by a jury that different equipment would have been operated in a different manner. The use of the truck with gin pole equipment could just as likely have allowed the pipe to bounce to the ground since the results of the procedure would depend upon the manner of operation.

We observe from the record, including the various exhibits, that the width of the side boom which was narrower than the width of the gin poles was of no consequence, and thus not determinative with

respect to this accident, since the pipe struck the center weevil pin and the ground without reaching the entire distance from the float where the side boom was located. In addition, the joint of pipe, which spun on top of the bundle of pipe as the cable was pulled out, could with equal probability have fallen to the ground between the front of the float and the center weevil pin, where there would be no boom to break the fall regardless of which of the two types of equipment was used.

A possible cause of an injury becomes a probable cause only when, in the absence of other reasonable causal explanation, it becomes more likely than not that the injury was the result of such cause in fact. Since liability cannot rest upon speculation or conjecture, it is essential that the evidence show at least a reasonable probability that appellant's injuries were caused by one or more of appellees' negligence. Appellant must show more than a possibility that the use of the side boom loader was the cause in fact. *Lenger v. Physicians' General Hospital, Inc.,* 438 S.W.2d 408 (Tex. Civ.App.—Fort Worth 1969) aff'd, 455 S.W.2d 703 (Tex.1970); *Bellaire General Hospital, Inc. v. Campbell,* 510 S.W.2d 94 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.).

Even if the question of proximate cause were reached, we would hold that the testimony offered in support of appellant's assertion that but for the use of the side boom loader the accident in question would not have occurred, does no more than raise a surmise or suspicion of cause in fact, *Lenger v. Physicians' General Hospital, Inc.,* supra; *Green v. Texas & P. Ry. Co.,* 125 Tex. 168, 81 S.W.2d 669 (1935), and that such evidence is, in legal effect, no evidence. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752 (Tex.1970); *Hamill v. Brashear,* 513 S.W.2d 602 (Tex.Civ.App.— Amarillo 1974, writ ref'd n. r. e.).

In view of the foregoing, it is our opinion that no fact issue as to actionable negligence was raised and that the court properly withdrew the cause from jury consideration and entered the take-nothing judgment. Appellant's point of error is overruled.

For the reasons above stated, the judgment of the trial court is affirmed.